OPINION
{¶ 1} Plaintiff-appellant, Robin D. Noll, appeals the March 18, 2005 decree of divorce entered by the Court of Common Pleas, Domestic Relations Division, Union County, Ohio finalizing her divorce from defendant-appellee, Leonard Veti.
 {¶ 2} The facts relevant to this appeal are as follows. Robin was previously married to David Noll from 1981 until their divorce in 1997. They jointly owned a residence located in Port Richey, Florida known to all parties as the "Miller Bayou home." Pursuant to their agreed settlement, adopted in their divorce decree, David Noll obtained exclusive use and possession of the Miller Bayou home in order to prepare it for sale. They agreed to list the property for sale at $119,900.00. When the property was sold, Robin would receive $50,000.00 from the proceeds of the sale.
 {¶ 3} Robin's testimony, which appears from the record to be uncontested, indicates that she came to a subsequent agreement with David in early 1999. Pursuant to this agreement, they would not sell the Miller Bayou home and Robin would have exclusive possession of it. The property would remain in both of their names, and would pass to the survivor between them. They also agreed to purchase a separate residence for David. Additionally, Robin and David continued to operate a business they owned together after the dissolution of their marriage.
 {¶ 4} Robin married appellee, Leonard, on July 11, 1999, and they apparently moved into the Port Richey residence sometime prior to the marriage in 1998. Although the parties were residing in the Miller Bayou home, testimonial evidence indicates that David Noll continued to make the mortgage payments on the property until his death in December 1999. Upon David's death, Robin inherited his interest in the Miller Bayou home. Thereafter, Robin made the mortgage payments until the mortgage was paid off in March 2001.
 {¶ 5} Robin and Leonard continued to live in the home during this period. The record indicates that they made several improvements to the residence. They remodeled a bathroom, repaired drywall, installed a second entrance door, resealed the roof, and repainted the exterior of the home. After making these improvements, the parties were able to sell the residence in 2002 for $148,475.57.
 {¶ 6} They deposited the proceeds of the sale of the Miller Bayou home into a joint savings account at Union Planters Bank in July 2002. The record indicates that Robin transferred $25,000.00 into a checking account at that bank jointly owned with Leonard on August 18, 2002. Shortly thereafter, she closed their accounts at Union Planters Bank and then opened a new account at Enterprise National Bank in Tennessee that was solely in her name with an initial deposit of $137,245.43. The evidence of the money trail ends there; however, at the time of the filing of this divorce action, the record indicates that the parties had a joint checking account at Fifth Third Bank with a balance of $557.27, and Robin had a separate savings account at Fifth Third with a balance of $101,804.49.
 {¶ 7} Robin filed for divorce from Leonard on February 11, 2004. On that date, a restraining order was entered prohibiting both parties from disposing of the funds in their accounts before resolution of the divorce.
 {¶ 8} The divorce action came before a magistrate on July 2, 2004. The magistrate found that $53,575.57 from the sale of the Miller Bayou home represented the appreciation of the value of the property, and determined that this was a marital asset. The court came to this determination by subtracting $94,900 (the $119,900.00 value of the property in 1997 minus the $25,000.00 mortgage) from the 2002 sale price of the home which was $148,475.57. The appreciation figure of $53,575.57 amounted to 36.08% of the 2002 sale price. The court then awarded Leonard one-half of 36.08% of the funds remaining in the parties' accounts at the time of the divorce; those funds totaled $102,361.76 ($557.27 plus $101,804.49). Thus, the magistrate found that $36,932.12, an amount equal to 36.08% of $102,361.76, should be divided equally between the parties, with each receiving $18,466.06. The remaining 63.92% of the funds, $65,429.64, was awarded to Robin as her separate property.
 {¶ 9} However, prior to the hearing before the magistrate, Robin withdrew the remaining funds in the Fifth Third accounts, $102,361.76, and purchased a home in Gahanna, Ohio. Since there were no funds remaining in the parties' accounts with which to pay Leonard the money due to him, the court ordered Robin to refinance the Gahanna residence and pay Leonard $16,591.06 ($18,466.06 minus $1,875, which was the difference in value between the vehicles awarded to the parties in the divorce). The magistrate gave Robin 30 days to refinance, and ordered the Gahanna residence to be listed for sale if she was unable or unwilling to obtain financing. The magistrate further ordered that if the house was not sold within 30 days after it had been listed the price of the property would be reduced $5,000.00 every 30 days until sold. Therefore, if the property had not been sold within 60 days of the court order the price would be reduced.
 {¶ 10} Also relevant to this appeal, the magistrate ordered that items of personal property, including household goods, jewelry, art and collectibles, and household furnishings be sold at auction because the parties did not agree upon their distribution or value and failed to have them appraised as required by court order.
 {¶ 11} Robin filed objections to the magistrate decision, which were overruled in the trial court's February 16, 2005 judgment entry. She subsequently appealed, and filed a motion to stay execution of the judgment pending appeal. Said motion is pending before the trial court.
 {¶ 12} In her appeal, Robin asserts two assignments of error:
It was an abuse of discretion for the trial court to use the particularmathematical calculation to determine the value of appreciation onappellant's separate property.
 It was an abuse of discretion for the court trial [sic] to order thesale of the personal property at auction and the refinancing or sale ofthe Gahanna property.
 {¶ 13} When reviewing the propriety of a trial court's determination in a domestic relations case, Ohio courts apply an abuse of discretion standard. Booth v. Booth (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. The term "abuse of discretion" connotes that the court's decision is unreasonable, arbitrary, or unconscionable; an abuse of discretion constitutes more than an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. Absent an abuse of discretion we cannot disturb the trial court's decision on appeal. Id. at 218.
 {¶ 14} In her first assignment of error, Robin contends that the trial court erred in calculating the amount of appreciation of the Miller Bayou residence during the marriage. In making that calculation, the trial court relied on the $119,900.00 price the property was originally listed for sale in 1997, which was two years before the marriage. The court then concluded that the "value" of the property was that amount minus the $25,000.00 mortgage. Robin argues that this was improper; she contends that the value of the property should have been at least $119,900.00. Specifically, she argues that it was an abuse of discretion for the trial court to determine the appreciation of the property based on the difference between the equity in the home in 1997, two years prior to the marriage, and the proceeds from the 2002 sale. Additionally, she argues that the value of the property was actually higher at the time of the marriage in 1999 than the value listed when the property was put up for sale in 1997.
 {¶ 15} Under R.C. 3105.171(B), the trial court is to determine what constitutes "marital property" and what constitutes "separate property." In most instances, the trial court is required to disburse one spouse's separate property to that spouse. See R.C. 3105.171(D). The marital property is to be equally distributed between the parties, unless an equal distribution is inequitable. R.C. 3105.171(C)(1).
 {¶ 16} R.C. 3105.171(A)(6)(a) defines "separate property" as:
[A]ll real and personal property and any interest in real or personalproperty that is found by the court to be any of the following:
 (i) An inheritance by one spouse by bequest, devise, or descent duringthe course of the marriage;
 (ii) Any real or personal property or interest in real or personalproperty that was acquired by one spouse prior to the date of themarriage;
 (iii) Passive income and appreciation acquired from separate propertyby one spouse during the marriage.
* * *
It is clear that the Miller Bayou property, in and of itself, was separate property; Robin owned a one-half interest in the property prior to the marriage and acquired the additional one-half interest by inheritance during the course of the marriage. R.C.3105.171(A)(6)(a)(i)(ii). Therefore, absent additional circumstances, the entire proceeds of the sale of the Miller Bayou residence would have been separate property that ordinarily would be disbursed to Robin.
 {¶ 17} However, it is clear that a part of the value of the residence when it was sold in 2002 was due to improvements made during the course of the marriage. The appreciation of the property due to those improvements is included in marital property pursuant to R.C.3105.171(A)(3)(a):
(3)(a) "Marital property means * * * all of the following: * * *
(iii) Except as otherwise provided in this section, all income andappreciation on separate property, due to the labor, monetary, or in-kindcontribution of either or both of the spouses that occurred during themarriage.
The record indicates that Leonard contributed labor, at the very least, in improving the property. Thus, the trial court correctly concluded that the appreciation of the residence due to that labor contribution was marital property pursuant to R.C. 3105.171(A)(3)(a)(iii). The value of the house prior to the marriage, however, remains Robin's separate property. See R.C. 3105.171(A)(3)(b).
 {¶ 18} At issue, then, is the trial court's calculation of the amount of appreciation. In making that determination, we note that not all appreciation is marital property. R.C. 3105.171(6)(a)(iii) clearly states that passive appreciation — increases in value due to inflation and other market factors — of separate property remains separate property. SeeMiddendorf v. Middendorf (1998), 82 Ohio St.3d 397, 401; Polakoff v.Polakoff (Aug. 4, 2000), 11th Dist. No. 98-T-0163. Only increases in the value of the property that are directly related to the spouses' contributions during the marriage are marital property.
 {¶ 19} However, in the instant case, Robin presented no evidence of the increase in value of the property due to passive appreciation. Thus, the trial court correctly concluded that the increase in the value of the property during the marriage was active appreciation that constituted marital property. See Sterbenz v. Sterbenz, 9th Dist. No. 21865, 2004-Ohio-4577, at ¶ 8 ("[O]ne must now show additional evidence regarding the amount of appreciation which should be accorded to passive, market factors, and that which accompanied improvement to the property.").
 {¶ 20} The trial court's calculation of that appreciation, however, is the ultimate issue in this case. Appreciation is the increase in the fair market value of the property. In order to calculate the appreciation of the property during the marriage, it is therefore necessary to compare the initial value of the property at the start of the marriage with the fair market value at the end of the marriage. In the instant case, the fair market value at the end of the marriage is easily determinable — the parties' sold the property in 2002 for $148,475.57.
 {¶ 21} The fair market value of the residence on the date of the marriage, however, is impossible to determine from the evidence in the record. The magistrate began her determination of this factual issue by using the price the property was listed at in 1997, $119,900.00. Although there is nothing in the record to indicate that the property was ever appraised at that value, and although the 1997 listing may not accurately represent the value of the property on the date of the marriage in 1999, the $119,900.00 figure was the only evidence in the record of the value of the property prior to the marriage. Thus, because there is no other evidence in the record available, we cannot say that the magistrate or the trial court abused its discretion in using the $119,900.00 figure to begin its calculations.
 {¶ 22} The magistrate further determined the value of the Miller Bayou property by reducing the $119,900.00 figure by the amount of the mortgage, which was $25,000.00. It is clear that as a factual matter the magistrate's statement that $94,900.00 represented the value of the property is incorrect. Having a mortgage on residential property does not reduce the fair market value of the property, it merely reduces the amount of money the seller will receive from the sale proceeds.
 {¶ 23} However, it was not error to include the amount of the mortgage in the calculation of the marital property accrued in this case. Any reduction in the amount of the mortgage represents "income" on separate property due to monetary contributions. These payments also constitute marital property pursuant to R.C. 3105.171(A)(3)(a)(iii). See Charles v.Charles (Jan. 22, 1997), 9th Dist. No. 96CA006396 ("Any reduction in the amount of the * * * mortgages during the marriage by the payment of the marital funds would be marital property.").
 {¶ 24} The record indicates that the mortgage was paid off during the marriage. Robin's own testimony indicates that she paid the mortgage after David's death in 1999, shortly after her marriage to Leonard. Those payments constitute marital property, and therefore the trial court correctly included those payments in calculating the portion of the proceeds of the sale of the Miller Bayou home that were marital property. Although Robin testified that the mortgage on the property had been reduced from $25,000.00 by the time of her marriage to Leonard, the only evidence in the record to determine how much of the mortgage had been paid off between 1997 and 1999 was Robin's self-serving testimony, which the trial court was free to disregard.
 {¶ 25} Based on the foregoing, we find that the trial court did not abuse its discretion in calculating the amount of proceeds from the sale of the Miller Bayou residence that were attributable to marital property. Appellant's first assignment of error is overruled.
 {¶ 26} In her second assignment of error, Robin asserts two objections. First, she argues that the magistrate erred in ordering that items of personal property be sold at auction. However, the record indicates that the magistrate ordered the parties to have the items of personal property appraised. If they failed to do so, the magistrate indicated that the items would be sold at auction. The magistrate was wholly within her power to order the sale of items of personal property in order to effectuate an equitable distribution of marital property. R.C. 3105.171(J)(2).
 {¶ 27} Moreover, the transcript record clearly indicates that Robin, through her attorney, agreed to have the items sold if they were not appraised:
THE COURT: Okay. If we don't have an agreement as far as who is gettingwhat, if it wasn't appraised, I'll sell it all.
 [Robin's attorney]: All right. That will be fine.
Accordingly, because the parties failed to have the personal property appraised, the order for sale of the personal property was within the discretion of the trial court.
 {¶ 28} Robin's final objection to the magistrate order related to the sale of her residence in Gahanna, Ohio. The record indicates that Robin purchased this property after the issuance of a restraining order which prohibited the parties from using or disposing the marital assets. Robin purchased the Gahanna residence with the proceeds from the sale of the Miller Bayou property, a portion of which was marital property. Therefore, Robin was in violation of court order.
 {¶ 29} Robin objects to the magistrate's order requiring her to refinance the Gahanna property in order to pay Leonard his portion of the proceeds from the sale of the Miller Bayou property. Specifically, she objects to the fact she was given only thirty days to refinance and to the fact that order required the home to be sold within thirty days thereafter or the listing price would be reduced by $5,000.00 every thirty days until it was sold.
 {¶ 30} Although the trial court was permitted to order the sale of the Gahanna property, we find that the court abused its discretion in ordering that the sale price be reduced $5,000.00 every 30 days if the property was not sold. R.C. 3105.171(J)(2) permits the court to order "the sale or encumbrancing of any real * * * property" in order to fund an equitable distribution of the assets. Because Robin purchased the Gahanna residence with marital assets, the trial court was permitted to require her to refinance or sell the home in order to provide Leonard with his equitable share.
 {¶ 31} However, the order reducing the selling price of the home $5,000.00 every thirty days was beyond the power of the trial court. There is no authority granted pursuant to R.C. 3105.171(J)(2) allowing the trial court to issue an order that effectively results in destruction of an asset. In fact, under R.C. 3105.171(E)(3), a trial court is permitted to issue a distributive award in order to deter one party from dissipating or destroying a marital asset. Were we to allow the court itself to issue an order that would effectuate the same result it would thwart the intentions of the legislature in wanting to deter such activity. Therefore, we hold that the trial court abused its discretion by requiring a reduction in the sale price of the property every thirty days.
 {¶ 32} Accordingly, and to this extent only, appellant's second assignment of error is sustained. Based on the foregoing, the judgment of the trial court is affirmed in part and reversed in part. The order requiring the reduction in the sale price of the property if it is not sold within 60 days is vacated, and the matter is remanded to the lower court for further proceedings consistent with this opinion. We note, however, that nothing in this opinion is intended to interfere with the continuing jurisdiction of the trial court to effectuate an alternative remedy if the Gahanna residence is not refinanced or sold within 60 days.
Judgment affirmed in part and reversed in part.
 Cupp, P.J., and Bryant, J., concur.