OPINION
{¶ 1} This appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. In this case, both the plaintiff, Debbie Hiscox, and the defendant, Douglas Hiscox, have appealed from a the decision of the Columbiana County Court of Common Pleas that found them both in contempt of court, sentenced them to thirty days in jail apiece, and fined them each $250.00. Both Debbie and Douglas respectively argue that the trial court erred when finding them in contempt and imposing a punishment for that contempt. We agree. There is no evidence showing that Douglas was in contempt of a court order. Furthermore, the trial court abused its discretion when issuing the order underlying its finding that Debbie was in contempt. Accordingly, the trial court's decision as to both Debbie and Douglas are reversed.
 Facts {¶ 2} On June 13, 2005, Debbie filed a complaint in divorce against her husband, Douglas. On June 16, 2005, a magistrate issued temporary orders prohibiting either party from "selling, transferring, destroying, hiding, conveying, encumbering, gifting, or otherwise disposing of any property, pending resolution of this case." On November 9, 2005, the trial court issued additional temporary orders, which included an order that "[e]ach party * * * pay their own personal expenses including their automobile expenses."
 {¶ 3} On December 23, 2005, the trial court scheduled a "final pretrial" for February 10, 2006, and a trial date for February 17, 2006. That order stated that "all parties and counsel" should be present at each proceeding. Douglas did not appear at the final pretrial and his counsel appeared late for that proceeding. According to the trial court, this precluded "meaningful settlement negotiations" and "resolution of outstanding discovery issues." The trial court did not issue a show cause motion after Douglas's failure to appear at the final pretrial.
 {¶ 4} The matter proceeded to trial on February 17, 2006. However, the trial could not be completed on that day because of discovery issues. The trial court set the case for conclusion on April 21, 2006, and issued temporary orders. In those *Page 3 
temporary orders, the trial court ordered that the parties sell their real estate at auction "as soon as practicable" after March 1, 2006, and sell "[a]ll household goods, personal property, vehicles of every nature and description" at the same auction. The order gave the parties until February 23, 2006, to file a jointly prepared judgment entry exempting any personal property from the sale by auction. It also ordered that all prior temporary orders were still in effect.
 {¶ 5} On February 23, 2006, Debbie moved for an extension of time to file a jointly prepared judgment entry. The trial court denied that motion on March 2, 2006. Debbie then moved on March 13, 2006, for the trial court to determine separate and marital property, exempt separate property from the sale, and postpone or cancel the sale until this could be accomplished. On March 17, the trial court set this motion for hearing at the date scheduled for the conclusion of the trial, April 21st.
 {¶ 6} Debbie and Douglas then both filed motions for contempt sanctions. Douglas's motion was based on Debbie's failure to comply with the trial court's order to sell all personal property at auction. Debbie's motion alleged that Douglas had traded in his automobile and purchased a new one, that he had incurred "significant credit card debt, and that he had "failed to pay attorney fees and spousal support pursuant to the Court's order."
 {¶ 7} On April 21st, the trial court heard both contempt motions, but continued the trial and did not rule on Debbie's pending March 13th motion. At the conclusion of a hearing, the trial court found both Debbie and Douglas in contempt, sentenced each of them to thirty days in jail, and fined each of them $250.00. Its contempt finding against Debbie was based on her failure to comply with the court's order to sell all personal property at auction. The court's contempt finding against Douglas was because of the trade-in of his automobile and the incurrence of credit card debt. The trial court specifically found that he had purged the contempt charges based on non-payment of support and attorney fees.
 {¶ 8} Debbie and Douglas have both appealed from the trial court's judgment, but the issues each of them raise are distinct from the issues raised by the *Page 4 
other. We will address Douglas's arguments first.
 Douglas's Contempt {¶ 9} Douglas argues five assignments of error, the first four of which argue:
 {¶ 10} "The finding of the trial court that Defendant-Appellant Douglas T. Hiscox had violated any of the court's temporary orders or restraining orders was unsupported by the evidence and against the manifest weight of the evidence."
 {¶ 11} "The finding of the trial court that Douglas T. Hiscox had willfully violated court orders and was thereby guilty of criminal contempt of court was unsupported by the evidence and against the manifest weight of the evidence."
 {¶ 12} "The trial court erred in finding Douglas T. Hiscox in criminal contempt where the prohibited conduct that formed the basis of the contempt was impermissibly vague."
 {¶ 13} "The trial court erred in finding the actions of Douglas T. Hiscox to be criminal contempt."
 {¶ 14} These assignments of error all address the same issues of law and fact and will be addressed together. In these assignments of error, Douglas contends that the trial court's decision finding him in contempt of court is against the manifest weight of the evidence; he just couches his argument differently in each of those separate assignments of error. He contends that he could not have been in contempt of the trial court's temporary order since it neither prevented him from incurring debt or trading-in a leased vehicle, that the order was ambiguous if the trial court intended to prevent this type of conduct, and that his actions were not willful because of that ambiguity.
 {¶ 15} We cannot reverse a finding of contempt by a trial court unless that court abused its discretion. State ex rel. Ventrone v. Birkel
(1981), 65 Ohio St.2d 10, 11. An abuse of discretion consists of more than an error of judgment; it connotes an attitude on the part of the trial court that is unreasonable, unconscionable, or arbitrary.State v. Lessin, 67 Ohio St.3d 487, 494, 1993-Ohio-0052; Rock v.Cabrai (1993), 67 Ohio St.3d 108, 112. When applying the abuse of discretion standard of *Page 5 
review, we are not free merely to substitute our judgment for that of the trial court. In re Jane Doe 1 (1991), 57 Ohio St.3d 135, citingBerk v. Matthews (1990), 53 Ohio St.3d 161.
 {¶ 16} In this case, there were three sets of temporary orders set forth by both the trial court and its magistrate. The first set of orders was signed by the magistrate three days after the complaint was filed. Those orders provided, in whole, as follows:
 {¶ 17} "1. Both parties are hereby restrained from selling, transferring, destroying, hiding, conveying, encumbering, gifting, or otherwise disposing of any property pending the resolution of this case.
 {¶ 18} "2. Both parties are hereby restrained from annoying, harassing, threatening, intimidating, molesting, or otherwise interfering with the other party.
 {¶ 19} "3. Neither party shall cancel or modify any existing insurance policy (life, health, disability, homeowners, etc) during the pendency of this matter or change the beneficiaries on any plans, policies or accounts."
 {¶ 20} The trial court later set forth additional temporary orders, which provided, in whole, as follows:
 {¶ 21} "Both parties shall complete the discovery addressed in open court and raised by the Motion to Compel;
 {¶ 22} "Both parties shall file, within fourteen days, updated accurate and full financial disclosure affidavits as required by the Local Rules of Court;
 {¶ 23} "Each party shall pay their own personal expenses including their automobile expenses, electric for their own residential use and other cable, water and garbage bills;
 {¶ 24} "The Defendant shall pay the mortgage, home equity, taxes and insurance and other expenses directly related to the marital residence located at 39880 Miller Road, Leetonia, OH 44431 plus timely minimum payments on all marital credit cards.
 {¶ 25} "In consideration of O.R.C. 3105.18 and on a temporary basis, the Defendant shall also pay the sum of $1,500 per month, plus processing fees, *Page 6 
commencing November 15, 2005 directly to OCSPC, P.O. Box 182372, Columbus, Ohio 43218.
 {¶ 26} "Each party shall pay their own attorney fees."
 {¶ 27} The court then issued a final set of temporary orders after it continued the trial. Those temporary orders provided, in full, as follows:
 {¶ 28} "1.) The marital real estate shall be sold by Kiko Auctioneers, at absolute auction in March, 2006, as soon as practicable after expiration of their current listing agreement on March 1, 2006. The existing restraining order prohibits any transfer without prior court approval.
 {¶ 29} "2.) All household goods, personal property, vehicles of every nature and description shall be sold at the same scheduled auction.
 {¶ 30} "3.) The parties may exempt any item from number two above by a written joint prepared judgment entry submitted for filing to this Court on or before February 23, 2006.
 {¶ 31} 4.) The Richard T. Kiko Agency shall escrow any sale proceeds after necessary expenses and commissions, pending further order of the Court at the conclusion of the above trial.
 {¶ 32} 5.) The Defendant, Douglas T. Hiscox, shall pay partial attorney fees to Plaintiffs counsel of $1,500, forthwith, as a sanction for his dilatory response to discovery and his failure to appear at the February 10, 2006 pretrial.
 {¶ 33} "6.) Defendant, Douglas T. Hiscox's monthly obligation for spousal support is increased to $2,500 per month, commencing March 1, 2006, and continuing pending the final order in this case.
 {¶ 34} "7.) In all other respects the prior temporary orders are unchanged."
 {¶ 35} The trial court found Douglas guilty of contempt of these temporary orders because he traded in his vehicle, purchased a new one, and incurred substantial credit card debt. However, none of these actions were actually in violation of any of the trial court's orders.
 {¶ 36} First, none of the temporary orders prevent either of the parties from *Page 7 
incurring additional debt pending the outcome of the divorce, so Douglas could not have violated any court order when he incurred credit card debt or purchased a new vehicle. Accordingly, the only possible way that Douglas could have violated the temporary orders was by trading in his old vehicle.
 {¶ 37} At the contempt hearing, Douglas testified that his old vehicle had been leased, not purchased. The trial court's order prevented him from transferring or disposing of any property pending the outcome of the case. Douglas argues that since the vehicle was leased, it was not his property.
 {¶ 38} A lease gives the lessee "the right to use and occupy the property," but does not give the lessee ownership of that property. Black's Law Dictionary (8th Ed.1999), 907. Thus, the parties did not have an ownership interest in the vehicle and, therefore, no equity in the vehicle. Since Douglas did not own the vehicle, he could not have engaged in "selling, transferring, destroying, hiding, conveying, encumbering, gifting, or otherwise disposing of" any of the couple's property when he traded in the leased vehicle.
 {¶ 39} In conclusion, there is no evidence in the record showing that Douglas violated the trial court's orders. Accordingly, the trial court abused its discretion when it found Douglas in contempt. Douglas's first four assignments of error have merit.
 Douglas's Sanctions {¶ 40} In his fifth assignment of error, Douglas argues:
 {¶ 41} "The trial court abused its discretion in finding Douglas T. Hiscox guilty of criminal contempt and imposing a jail sentence of thirty (30) days incarceration."
 {¶ 42} Our resolution of Douglas's first four assignments of error render this one moot. Since the trial court could not properly find Douglas in contempt, it could not punish him for the non-existent contempt.
 Notice of Contempt Proceedings Against Debbie {¶ 43} In the first of five assignments of error, Debbie argues:
 {¶ 44} "The trial court erred in proceeding with a contempt hearing when Plaintiff/Co-Appellant was never served with summons and notice of the contempt *Page 8 
action."
 {¶ 45} She contends that she was denied due process of law because the trial court never properly served her with summons and notice of the contempt action. Thus, she maintains that the trial court could not have properly proceeded with the contempt action against her. Debbie's arguments in this regard are meritless.
 {¶ 46} The record reflects that both the "Summons and Order to Appear" and the "Summons for Contempt" were sent to Debbie's home address via certified mail on April 14, 2006. However, the record does not contain a certified return receipt indicating that Debbie actually received these documents. At the contempt hearing, Debbie's attorney objected based on lack of proper notice. Her attorney's statements seem to indicate that the attorney may have received courtesy copies of these documents, but this is not clear. See Tr. at 74 ("She read my copy. She has not been served for the record.").
 {¶ 47} Contempt can be categorized as either direct, in the presence of the court, or indirect, outside the presence of the court. In reLands, Lots or Parts of Lots Omitted From ForeclosureProceedings-1944 (1946), 146 Ohio St. 589, 595. A trial court can punish direct contempt summarily. R.C. 2705.01. However, R.C. 2705.03 provides that one alleged to be in indirect contempt shall have the opportunity to be heard in court. Due process requires that an alleged contemnor be given notice of such a hearing and that such notice be reasonably calculated to reach an individual alleged to be in contempt. Hansen v.Hansen (1999), 132 Ohio App.3d 795, 799. Proper service is not required if the alleged contemnor has actual notice of the contempt charges pending against her. Tandon v. Tandon, 7th Dist. No. 00JE16, 2001-Ohio-3157, at 19, footnote 1, citing Rose v. Rose (Mar. 31, 1997), 10th Dist. No. 96APF09-1150.
 {¶ 48} In this case, Debbie's testimony shows that she had actual notice of the contempt proceedings since she had read a copy of the contempt motion that Douglas filed against her. Thus, even though there may be some legal question about whether Debbie was properly served, she clearly had actual notice of the *Page 9 
hearing and allegations against her. Debbie cannot complain of the notice served upon her if she had actual notice. Tandon. Thus, her arguments in this assignment of error are meritless.
 Validity of Order Serving as Basis of Debbie's Contempt {¶ 49} In her fifth assignment of error, which we take out of order, Debbie argues:
 {¶ 50} "The trial court abused its discretion in the order upon which the finding of willful contempt by Plaintiff/Co-Appellant is based."
 {¶ 51} Debbie contends she could not be held in contempt for not participating in the auction of the parties' real and personal property since the trial court abused its discretion when it ordered that auction. We agree.
 {¶ 52} In this case, the complaint for divorce was first filed in June 2005. The trial court had scheduled a pretrial for February 10, 2006, and a trial for February 17, 2006. Douglas did not attend the pretrial, so the parties could not engage in settlement discussions at that time. Because of discovery issues, the parties could also not complete the trial on the assigned date. The trial court noted that they spent two hours of the court's time discussing those issues, set the case for trial in April 2006, and issued the following orders:
 {¶ 53} "1.) The marital real estate shall be sold by Kiko Auctioneers, at absolute auction in March, 2006, as soon as practicable after expiration of their current listing agreement on March 1, 2006. The existing restraining order prohibits any transfer without prior court approval.
 {¶ 54} "2.) All household goods, personal property, vehicles of every nature and description shall be sold at the same scheduled auction.
 {¶ 55} "3.) The parties may exempt any item from number two above by a written joint prepared judgment entry submitted for filing to this Court on or before February 23, 2006.
 {¶ 56} "4.) The Rickard T. Kiko Agency shall escrow any sale proceeds after necessary sale expenses and commissions, pending further order of the Court *Page 10 
at the conclusion of the above trial."
 {¶ 57} The trial court's order that the property be auctioned is an interlocutory order and is not the order from which Debbie directly appealed. However, "[w]here a non-appealable interlocutory order results in a judgment of contempt, including fine or imprisonment, such a judgment is a final and appealable order and presents to the appellate court for review the propriety of the interlocutory order which is the underlying basis for the contempt adjudication." Smith v. Chester Tp.Bd. of Trustees (1979), 60 Ohio St.2d 13, paragraph one of the syllabus.
 {¶ 58} When dividing real and personal property at a divorce, a trial court has the duty to equitably divide and distribute the marital property. R.C. 3105.171(B). When making this division, the trial court must determine which assets are marital property and which assets are separate property. Id. R.C. 3105.171(A)(6) describes the various forms of separate property.
 {¶ 59} R.C. 3105.171(J)(2) gives a domestic relations court the authority to order that a couple's property be sold at auction. That section provides:
 {¶ 60} "The court may issue any orders under this section that it determines equitable, including * * * [a]n order requiring the sale or encumbrancing of any real or personal property, with the proceeds from the sale and the funds from any loan secured by the encumbrance to be applied as determined by the court." Id.
 {¶ 61} However, a trial court's authority to order a sale or auction is not absolute. Van Fossen v. Van Fossen (1988), 47 Ohio App.3d 175,176. "[A]n auction should not normally be ordered where there is a reasonable chance of a fair, timely and voluntary sale." Id. at syllabus. "[T]he role of the domestic relations court is to resolve the parties' disputes in a fair and equitable manner at a difficult time in their lives rather than embroiling them in further litigation."Oatey v. Oatey (1992), 83 Ohio App.3d 251, 262.
 {¶ 62} It is not clear that any Ohio appellate court has addressed whether an order that all personal property be auctioned in a divorce action is an abuse of discretion. For example, in Clark v. Clark (Oct. 31, 1984), 5th Dist. No. CA-1896, a *Page 11 
wife appealed a divorce decree ordering the "sale of `all other' property," and the appellate court affirmed this order without explanation. And in Noll v. Noll, 3rd Dist. No. 14-05-11,2005-Ohio-5754, at ¶ 26-27, the appellate court affirmed such an order because the appellant had specifically agreed to it before the trial court.
 {¶ 63} The case which has most closely addressed this issue isYerian v. Yerian, 5th Dist. No. 2001CA00397, 2002-Ohio-3093. In that case, the trial court ordered that the parties sell all of their assets at public auction, "except for clothing and personal effects." Id. at ¶ 31. The court stated that "any other property list which the parties mutually submit to the Court on or before" a specific date could be exempted from auction. Id. The appellate court affirmed the order because the parties had a large amount of debt when compared to a small amount of assets and "appellant stopped working after the filing of the divorce and threatened to file bankruptcy and leave town. These facts would lead any trial court to believe that all of the assets should be sold to relieve the debt and protect appellee." Id. at 32-33.
 {¶ 64} These facts are not present in this case. For instance, the order here does not except clothing and personal effects from auction. There has been no findings concerning the amount of debt vis a vis the parties' assets. There is no indication in the record that either party has threatened to file bankruptcy.
 {¶ 65} The trial court's order in this case puts each party at the mercy of the other. If one party wants some personal property, either marital or separate, exempted from sale, it can only do so with the agreement of the other party by a particular date. According to the literal language of the order, the parties must literally sell the clothes off their back, toiletries, and many other everyday items with negligible market value at the auction. It is safe to assume that the parties would be forced to spend more to replace these items than they would receive at auction. Thus, the trial court's order that all personal property be sold at auction was not fair, equitable, and in the best interests of the parties.
 {¶ 66} Furthermore, an order of this type is almost surely going to embroil the parties in further litigation. Rather than keeping their various household items and *Page 12 
dividing those items between themselves, the court has assured that the parties will further litigate about how the proceeds of the sale should be divided. Shedding parties of their assets, forcing them to refurbish their homes and reclothe themselves, and assuring further litigation is not the type of actions a trial court should take when trying to fairly and equitably divorce a couple.
 {¶ 67} Finally a trial court does not have the authority to order that a party's separate property be sold at auction. R.C. 3105.171(B) requires a trial court presiding over a divorce to "determine what constitutes marital property and what constitutes separate property." Then, with certain exceptions which do not apply in this case, the trial court must "disburse a spouse's separate property to that spouse." R.C.3105.171(D). But while a court must equitably divide the marital property, R.C. 3105.171(C), it "may make a distributive award to facilitate, effectuate, or supplement a division of marital property." R.C. 3105.171(E)(1). Finally, a trial court has the power to order "the sale or encumbrancing of any real or personal property" and distribute the proceeds of that sale or encumbrance. R.C. 3105.171(J)(2).
 {¶ 68} These statutory subsections, when read in pari materia, show that a trial court can liquidate a couple's marital assets when divorcing them, but must award a party their own separate property, rather than just the value of that separate property. Accordingly, a trial court does not have the authority to order that a parties' separate property be sold at auction. The trial court's order that all the property be sold at auction before determining what property is separate and what property is marital was an abuse of discretion.
 {¶ 69} In conclusion, the trial court abused its discretion when it ordered that all the parties' personal property be sold at auction. Debbie was improperly found in contempt of this invalid order. Debbie's fifth assignment of error is meritorious.
 Debbie's Remaining Assignments of Error {¶ 70} In her other three assignments of error, Debbie argues: *Page 13 
 {¶ 71} The trial court's finding that Plaintiff/Co-Appellant was in willful contempt is against the manifest weight of the evidence."
 {¶ 72} "The trial court erred in failing to provide contemnors with an opportunity to purge."
 {¶ 73} "The trial court's contempt sanctions constitute an abuse of discretion."
 {¶ 74} Our resolution of Debbie's fifth assignment of error renders any error in these remaining assignments of error moot.
 Conclusion {¶ 75} In conclusion, the trial court abused its discretion when it found both Debbie and Douglas in contempt. There are no facts in the record showing that Douglas was in contempt of court. Furthermore, Debbie could not be found in contempt since the trial court abused its discretion when it issued the order forming the basis of her contempt. The trial court's judgment finding both Debbie and Douglas in contempt of court is reversed and this case is remanded for further proceedings.
 Vukovich, J., concurs. Waite, J., concurs. *Page 1