[Cite as *Gatchel v. Gatchel*, 2013-Ohio-5289.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT


| | | |
|---|---|---|
| LISA GATCHEL, | ) | |
| | ) | CASE NO.    12 CO 44 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| DAVID GATCHEL, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS: Civil Appeal from Common Pleas Court, Domestic Relations Division, Case No. 11DR224.


JUDGMENT: Affirmed in part; Reversed in Part; Remanded.


APPEARANCES:
For Plaintiff-Appellee:          Attorney James Vivo
                                 3736 Boardman-Canfield Road
                                 Canfield, Ohio  44406

For Defendant-Appellant:         Attorney Tracey Laslo
                                 325 East Main Street
                                 Alliance, Ohio  44601


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Cheryl L. Waite


Dated:  November 27, 2013

VUKOVICH, J.

{¶1} Defendant-appellant David Gatchel appeals the decision of the Columbiana County Common Pleas Court, Domestic Relations Division. Appellant contends that the court abused its discretion in ordering him to pay spousal support to plaintiff-appellee Lisa Gatchel after her child support obligation to him ended, urging that the court did not determine if she had the ability to be self-supporting. He also alleges that the court abused its discretion in finding the entire equity in the residence to be marital property. Lastly, appellant states that it was unreasonable to order the parties to sell all of their personalty at auction if they could not agree on its division by a certain date.

{¶2} For the following reasons, we hereby affirm the support order and the division of the marital residence. However, the auction order is reversed, and the case is remanded for actual distribution of the personalty.

## STATEMENT OF THE CASE

{¶3} The parties were married on September 30, 1989. Their two children were born in October of 1994 and March of 1997. The wife filed a complaint for divorce in April of 2011. They both lived in the marital residence until the end of that year at which time the wife moved into an apartment.

{¶4} The magistrate held the divorce trial on March 8 and May 3, 2012. The husband asked for custody and child support. The wife asked for spousal support. The parties agreed that the husband could remain in the marital residence by paying the wife for her share of the marital equity. Each party claimed that portions of the equity could be traced to separate property contributions. The parties could not reach an agreement on certain items of personalty and testified as to those items in dispute.

{¶5} The magistrate released a decision on May 24, 2012. The magistrate valued the house at $165,000 as the husband urged. They had a line of credit for $24,688.90 and no mortgage. The magistrate divided the equity evenly. The magistrate then noted that the furniture, appliances, and household goods were not appraised and that the parties did not agree on their division. The magistrate gave

the parties until August 1, 2012 to reach an agreement regarding division of these items in order to avoid sale at public auction with an equal division of the net proceeds.

{¶6} The magistrate gave custody of the two children to the husband. An attached child support worksheet provided that the wife was obliged to pay $377.62 per month. The magistrate ruled that she was entitled to spousal support but she would not initially receive spousal support as an offset for the child support she owed. The husband was ordered to start paying spousal support in the amount of $300 per month for thirty-six months after the youngest child became emancipated. Jurisdiction to modify the amount or duration of spousal support was retained.

{¶7} Both parties filed objections. On October 1, 2012, the trial court overruled all objections and upheld the magistrate's decision. The court extended the date for an agreement on personalty until November 16, 2012, since the date set by the magistrate had passed during the objection process. The husband filed a timely notice of appeal and obtained a stay pending appeal. The husband sets forth three assignments of error. The wife has failed to file an appellate brief.

<u>ASSIGNMENT OF ERROR NUMBER ONE</u>

{¶8} Appellant's first assignment of error alleges:

{¶9} "The trial court's decision to place the entire financial burden of raising the parties' children on the Defendant-Appellant and order him to pay spousal support to the Plaintiff-Appellee without even attempting to determine whether she had the ability to be self-supporting was unreasonable, arbitrary, and unconscionable, and must therefore be reversed."

{¶10} Appellant generally urges that the total spousal support order was unreasonable, arbitrary, and unconscionable. He also contends that the court was required but failed to evaluate the wife's resources, ability, and potential to be self-supporting, citing the portion of the Fourth District *Yazdani-Isfehani* case which dealt with the test for a spousal support order that had no termination date. *See Yazdani-Isfehani v. Yazdani-Isfehani*, 4th Dist. No. 08CA3, 2008-Ohio-4662.

**{¶11}** In order to ascertain the reasonableness of the order, we must deconstruct the actual amounts ordered. As aforementioned, the husband's spousal support obligation was wholly offset by the wife's child support obligation until the youngest child was emancipated. So, the spousal support order was essentially $377.62 per month[1] from May 25, 2012 (the effective date of the support order) until the graduation of the oldest child (who turned 18 in October of 2012). Upon emancipation of the oldest child, the wife would only have the obligation to pay for one child under the child support worksheet. Thus, the spousal support award was effectively cut in half to $188.81 per month upon the oldest child's emancipation and terminate when their youngest child is emancipated. The youngest child will turn 18 in March of 2015. When that child graduates, the spousal support award will then increase to $300 per month for 3 years.

**{¶12}** Pursuant to R.C. 3105.18(B), the court may award reasonable spousal support. In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment and the duration of spousal support, the court shall consider all of the following factors: (a) income; (b) the relative earning abilities; (c) the parties' ages and physical, mental, and emotional conditions; (d) the retirement benefits; (e) the duration of the marriage; (f) the extent to which it would be inappropriate for custodian of a minor marital child to work outside the home; (g) the standard of living established during the marriage; (h) the parties' relative educations; (i) the relative assets and liabilities, including any court-ordered payments; (j) the contribution of each party to the education, training, or earning ability of the other party; (k) the time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment (if the education, training, or job experience and employment is in fact sought); (l) the tax consequences of spousal support; (m) the lost income production capacity that

---

[1]Line 29 of the worksheet states that the mother's final figure was $4,531.44 and that the decree would show $385.17 (after poundage) if she were named the obligor. This comes to $377.62 per month that the husband would have received in child support before the offset.

resulted from marital responsibilities; and (n) any other factor that the court expressly finds to be relevant and equitable. R.C. 3105.18(C)(1).

**{¶13}** The trial court's decision on the amount and duration of spousal support cannot be reversed absent an abuse of discretion. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. An abuse of discretion connotes more than an error in judgment; it implies that the trial court's judgment is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). The appellate court must refrain from substituting its judgment for that of the trial court on matters of spousal support. *Id.* Moreover, the appellate court should not independently weigh the evidence in most domestic relations cases, and instead should be guided by the presumption that the trial court's findings are correct. *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988).

**{¶14}** The trial court must indicate the basis for an award of spousal support in sufficient detail to enable a reviewing court to determine that the award is fair, equitable, and in accordance with the law. *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 96, 518 N.E.2d 1197 (1988). Still, the court need not expressly comment on each factor or explain its rationale in minute detail. *Miller v. Miller,* 7th Dist. No. 08JE26, 2009-Ohio-3330, ¶ 142.

**{¶15}** The magistrate stated that spousal support was based primarily on the following factors: the husband's substantially greater income and earning ability than the wife, the length of the marriage, and the tax consequences to the parties as seen in an attached print-out showing how spousal support would affect the parties' taxes. *See* R.C. 3105.18(C)(1)(a) (income), (b) (relative earning abilities), (e) (duration of marriage), and (l) (tax consequences). The trial court agreed that the evidence supports the factors relied upon by the magistrate. The trial court noted that some of the factors to be considered in awarding spousal support are the relative earning abilities, the retirement benefits, the duration of the marriage, the standard of living established during the marriage, and any other factor the court finds relevant.

**{¶16}** The court then stated there was a sizeable disparity in incomes. *See* R.C. 3105.18(C)(1)(a) (income). Specifically, the husband's income was $54,667,

and the wife's income was $31,575.  The court explained that the wife testified that she had little or no room for advancement at her place of employment, gets no overtime, and has no specialized training or education.  *See* R.C. 3105.19(C)(1)(b) (relative earning abilities).  We add that the husband has been at his employer for many years and can work overtime.

{¶17} The trial court pointed out that the husband was the primary wage earner throughout the marriage, a marriage of more than 22 years.  *See* R.C. 3105.18(C)(1)(e) (duration of marriage), (n) (any other factor found relevant).  The court observed that the parties lived a relatively debt-free life with the only debt a line of credit on the house for less than $25,000.  *See* R.C. 3105.19(C)(1)(g) (standard of living during marriage).  We add that they lived in a three bedroom house which they built in 1997 on more than five acres, where the husband will remain while the wife has moved to an apartment with rent costing $530 per month.

{¶18} The court also noted that the husband's retirement benefits were greater than the wife's.  *See* R.C. 3105.18(C)(1)(d) (retirement benefits).  The court then expressly disagreed with the husband's suggestion that spousal support is not reasonable if the wife can be "self-supporting" and pointed out that his citation to *Yazdani-Isfehani* was not on point to his argument.

{¶19} As to the other factors, evidence was not presented on the parties' ages or their physical, emotional, or mental conditions.  *See* R.C. 3105.18(C)(1)(c).  No testimony was presented on either party's contribution to the other's education, training, or earning ability or on new education or training being sought for either spouse.  *See* R.C. 3105.18(C)(1)(j)-(k).  There was no testimony on the husband's education, and the wife stated that she has no special skills or training.  *See* R.C. 3105.18(C)(1)(h).

{¶20} There was no claim of lost income production capacity that resulted from marital responsibilities.  *See* R.C. 3105.18(C)(1)(m).  The wife testified that she was employed in a similar office position for the entire marriage and that she makes $1 per hour less now that she has been reclassified as full-time in order to obtain health insurance, which she previously did not need as she was covered by the

husband's plan. Finally, it seems the parties' relative assets would be similar after the divorce. The husband would have more liabilities on paper due to the line of credit and probably a new mortgage in order pay the wife for her equity in the residence, but he would also own a house. *See* R.C. 3105.18(C)(1)(i).

**{¶21}** Considering all of the relevant factors, we cannot conclude that the trial court's spousal support order was unreasonable, unconscionable, or arbitrary. Need or the ability to be self-supporting is but one factor that the court may consider under the catch-all provision. *See* R.C. 3105.18(C)(1)(n); *Miller v. Miller*, 7th Dist. No. 08JE26, 2009-Ohio-3330, ¶ 144. The court outlined the many factors that the court found most important. As detailed above, the parties' relative incomes, earning abilities, work history, and advancement potentials, the tax consequences of the spousal support, the parties' prior standard of living, and the nearly 23 year marriage with children were important to the court in determining that the award was reasonable. The husband makes $21,000 more than the wife, and he has always been the family's primary wage earner.

**{¶22}** We conclude that the amount and duration of spousal support here do not evince an abuse of discretion. Although different judges may have reached different spousal support determinations from that of the trial court here and from each other, we refuse to substitute our judgment for that of the trial court under the circumstances of this case. *See Blakemore*, 5 Ohio St.3d at 21. This assignment of error is overruled.

ASSIGNMENT OF ERROR NUMBER TWO

**{¶23}** Appellant's second assignment of error provides:

**{¶24}** "The trial court failed to consider the totality of the circumstances and the numerous documents that Defendant-Appellant provided evidencing his interest in the real estate. As such, the trial court's unreasonable, arbitrary and unconscionable decision regarding the equity in the marital residence must be reversed."

**{¶25}** A trial court is vested with broad discretion in dividing marital property. *Bisker v. Bisker*, 69 Ohio St.3d 608, 609, 635 N.E.2d 308 (1994). The division of

marital property shall be equal unless this would be inequitable. R.C. 3105.171(C)(1). Each spouse shall be considered to have contributed equally to the production and acquisition of marital property. R.C. 3105.171(C)(2).

{¶26} In dividing marital property, the court shall consider all of the following factors: (1) the duration of the marriage; (2) assets and liabilities; (3) the desirability of awarding the family home to the spouse with custody; (4) the liquidity of the property; (5) the economic desirability of retaining an asset intact; (6) the tax consequences; (7) the costs of sale if necessary; (8) any division made in a separation agreement; (9) retirement benefits; and (10) any other factor that the court expressly finds to be relevant and equitable.

{¶27} Marital property can include all real property that currently is owned by either or both of the spouses and that was acquired by either or both of the spouses during the marriage. R.C. 3105.171(A)(3)(a)(i). Marital property can also include all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage. R.C. 3105.171(A)(3)(a)(iii).

{¶28} However, marital property does not include separate property. R.C. 3105.171(A)(3)(a)(i), (b). Generally, the court should disburse a spouse's separate property to that spouse. R.C. 3105.171(D). There are various examples of separate property. For instance, an inheritance of one spouse is separate property. R.C. 3105.171(A)(6)(a)(i). And, property acquired by one spouse prior to the date of the marriage is separate property; as is passive income and appreciation acquired from separate property. R.C. 310.1717(A)(6)(a)(ii)-(iii).

{¶29} Separate property also includes compensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets. R.C. 3105.171(A)(6)(a)(iv). Any gift that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse is separate property. R.C. 3105.171(A)(6)(a)(vii).

**{¶30}** The holding of title to property by one spouse individually or co-ownership by both spouses does not determine whether the property is marital property or separate property. R.C. 3105.171(H). The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable. R.C. 3105.171(A)(b)(6). The party seeking to have an asset classified as separate property has the burden of proof by a preponderance of the evidence to trace the asset to separate property. *Lucas v. Lucas*, 7th Dist. NO. 11NO382, 2011-Ohio-6411, ¶ 10.

**{¶31}** Both parties asked to label some of the equity in the Leetonia residence as separate property. The husband purchased a home in Lisbon in 1976. (May 3, 2012 Tr. 21). He provided the 1976 deed as an exhibit (which exhibit does not include the purchase price). The parties married in 1989 and resided in that Lisbon house. The husband provided a printout from the auditor's website, which valued the property at $38,070 in 1986 and $54,620 in 1998. The husband testified that the Lisbon residence was sold in 1997 for $73,000 and provided that deed as an exhibit (which exhibit also did not contain the sale price). (May 3, 2012 Tr. 23).

**{¶32}** The husband stated that he used $67,000 in sale proceeds to pay down the bridge loan on the new house they were building in Leetonia. (May 3, 2012 Tr. 25). He provided a loan modification contract showing that the amount of the loan was decreased by $67,000 due to a principal payment made shortly after the sale of the Lisbon house. Thus, he asked that $67,000 in equity on the marital home be classified as separate property. (Tr. 25).

**{¶33}** The wife testified that she invested $50,000 of her separate property into the parties' two residences. This was her net proceeds from a medical malpractice lawsuit recovered in her name alone. She stated that she used over $16,000 of the settlement proceeds to pay off the loan on the Lisbon residence, which she disclosed that the husband had purchased for $22,000. (March 8, 2012 Tr. 38-39). She also testified that she used $25,000 to buy the land for their Leetonia residence. (March 8, 2012 Tr. 40).

{¶34} In addition, the wife produced receipts, which she testified were paid out of her settlement proceeds in the following manner: $1,778 for waterproofing the exterior foundation, $5,020 for the drive and electric, and $4,496 for excavation and septic. (March 8, 2012 Tr. 41-42). The husband responded by stating that her medical malpractice settlement was placed into the joint checking account like all of their other money and the bills were all paid out of that account. (May 3, 2012 Tr. 45-46).

{¶35} The magistrate found that neither party met their burden to prove their separate property claims by a preponderance of the evidence. The trial court agreed after an independent review of the record. The court noted that the pleadings do not mention separate property claims and the financial affidavits did not fill in the section for separate property which specified inheritance, gift, or premarital property. The court pointed out that the parties commingled separate funds into a joint account. The court concluded that accurate tracing was not possible and any separate property was transmuted into marital property.

{¶36} The magistrate was in the best position to weigh the parties' credibility. The magistrate found that neither party proved their claim to entitlement to a separate share of the marital residence. The documents submitted by the husband showed sales and dates and some figures but did not provide the entire picture and do not take into account the marital funds used as payments on the Lisbon house after marriage and prior to its sale. He did not establish that the increased value of the Lisbon house involved passive appreciation or premarital labor. Moreover, he claims that the wife's separate property became marital when she deposited it in the joint checking account before paying for the residences, but provides no evidence that he did not do the same thing with the $67,000 proceeds prior to paying on the bridge loan.

{¶37} We need not substitute our judgment for that of the trier of fact on this weight and credibility issue. *See Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273 (1984) (fact-finder is best able to view the

witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.)

**{¶38}** In fact, even if the husband proved entitlement to separate property credit, then so did the wife. Under such circumstances, the trial court could have alternatively and rationally concluded that the parties' separate property claims regarding the residences offset in any event. The wife received $50,000 in separate property. The husband did not dispute this was originally separate or that it ended up being used on the residences. His argument was more of a suggestion that her money transmuted but his money did not.

**{¶39}** The husband wants credit for $67,000 that he states was the amount he received from the sale of the Leetonia home which he used to pay down the loan for the Lisbon home. His documentary evidence tends to support that this was where $67,000 came from. However, merely because the Lisbon house was purchased before marriage and was in solely his name is not dispositive of his entitlement to credit for that entire amount.

**{¶40}** According to the wife, the husband purchased that house for $22,000, and she eventually paid off his loan of $16,000 on the house. Thus, it could be concluded that part of that $67,000 that the husband claims is his was partly derived from the wife's $16,000 payment to his loan. Moreover, they lived in the Lisbon house as a married couple for over 7 years. The payments made during those years can be considered as coming from marital income. And, as aforementioned, the husband really did not attempt to establish that the increased value of the Lisbon residence at the time of sale was solely due to passive appreciation or premarital labor.

**{¶41}** Lastly, we note that appellant makes a contention regarding his proof that he inherited $1,500 from his father in 1998. This inheritance is further discussed in the next assignment where it belongs. The mismentioning of the inheritance under this assignment of error involving real estate appears to be derived from a misstatement in the magistrate's decision during magistrate's recounting of the

husband's testimony. However, appellant actually testified that he used his $1,500 inheritance to pay for a Craftsman tractor. (May 3, 2012 Tr. 26).

**{¶42}** For all of these reasons, this assignment of error is overruled.

ASSIGNMENT OF ERROR NUMBER THREE

**{¶43}** Appellant's third and final assignment of error contends:

**{¶44}** "The trial court's order regarding the division of personal property was impermissibly vague, and would permit Plaintiff-Appellee to force the sale of all property at issue merely by refusing to cooperate in dividing it. Therefore, the trial court's decision was unreasonable, arbitrary and unconscionable, and must be reversed."

**{¶45}** The magistrate's order divided vehicles and bank accounts and stated that each party shall retain their own clothing, jewelry and personal items. The order then stated: "The Court has a dilemma with dividing all of the other items of furniture, appliances and household goods and furnishings." The magistrate noted that the parties had not reached an agreement as to the division of these items and they were not appraised. The magistrate recommended that if the parties could not reach an agreement on these items by August 1, 2012, then the parties must immediately sign an auction contract and divide the net proceeds equally.

**{¶46}** The husband objected to this order stating it was vague and lacking in explanation as to how it would result in an equitable division. The husband urged that the magistrate should have specifically divided the disputed property. He also expressed that the order permitted the wife to force the sale of personalty merely by refusing to cooperate in a division. The wife's memorandum concurred with the magistrate's auction order.

**{¶47}** The trial court overruled the husband's objection and modified the agree-by date to November 16, 2012. The trial court stated that the Seventh District has recognized the right of the domestic relations court to order an auction, citing our *Hiscox* case and R.C. 3105.171(J)(2). The trial court then found that because there were no valuations, an auction was reasonable, voicing that this seemed to be the approach recommended in *Hiscox*.

{¶48} The trial court concluded that if "the parties are unable to agree on a division of the tangible property owned by them, it shall be sold at absolute public auction" and "[e]xcept as otherwise ordered, all household goods, and tangible personal property of every nature and description owned by the parties shall be sold * * *." The court allowed the parties to exempt any item from the auction by submitting a written joint prepared judgment entry to the court.

{¶49} The first problem with the trial court's order is that it refers to all personalty owned by the parties. However, the parties were not disputing the division of all personalty. They were fine with where some of the personalty was located. There is no reason to order all property sold at auction when the testimony disputed only a smattering of pieces.

{¶50} Moreover, the court cites our 2007 *Hiscox* case in support of its decision to auction all personalty. However, *Hiscox* actually supports the husband's position here. In that case, the trial court ordered all household goods, personal property, and vehicles of every nature and description to be sold at auction and allowed the parties to exempt any item from the auction by submitting a written joint prepared judgment entry. *Hiscox v. Hiscox*, 7th Dist. No. 06CO18, 2007-Ohio-1124, ¶ 54-55.

{¶51} We recognized that R.C. 3105.171(J)(2) provides a domestic relations judge the authority to order marital property to be sold at auction if such would be equitable. *Id.* at 59-60. This statute provides: "The court may issue any orders under this section that it determines equitable, including * * * An order requiring the sale or encumbrancing of any real or personal property, with the proceeds from the sale and the funds from any loan secured by the encumbrance to be applied as determined by the court." R.C. 3105.171(J)(2).

{¶52} We warned that the court's power to order a sale or an auction is not absolute. *Hiscox*, 7th Dist. No. 06CO18 at ¶ 61. We noted that it has been held that an auction should not normally be ordered where there is a reasonable chance of fair, timely and voluntary sale. *Id.* We then pointed out that the function of the

domestic relations courts is to resolve the parties' disagreements over their assets in a fair and equitable way at a difficult time in their lives. *Id.*

**{¶53}** This court disagreed with or distinguished cases from the Third and Fifth Districts regarding ordered auctions. We noted that the Third District upheld an order to sell at auction all personalty without explanation. *Id.* at ¶ 62, citing *Noll v. Veti,* 3d Dist. No. 14-05-11, 2005-Ohio-5754.[2] We then distinguished a Fifth District case which upheld an order to sell all assets at auction (except for clothing and personal effects). *Id.* at ¶ 63, citing *Yerian v. Yerian,* 5th Dist. No. 2001 CA00397, 2002-Ohio-3093. In affirming the auction order, the Fifth District focused on the following facts: the appellant stopped working upon the filing of the divorce; the appellant threatened to file bankruptcy and leave town; and the parties had a large debt and a small amount of assets. *Yerian,* 5th Dist. No. 2001 CA00397 at ¶ 32-33 (expressing concern that the appellee would be forced to pay joint debts in the absence of the auction order).

**{¶54}** As to the parties in *Hiscox,* this court found nothing in the record to suggest that either party threatened to file bankruptcy or leave the other with joint debts and noted that there was no finding regarding the amount of debt in relation to the amount of assets. *Hiscox,* 7th Dist. No. 06CO18 at ¶ 64 (also noting that the trial court failed to exempt personal effects from the auction). We pointed out that the order put each party at the mercy of the other merely because they could not agree in a divorce action. *Id.* at ¶ 65.

**{¶55}** We noted the negligible market value which would be collected at auction and the fact that the parties would have to replace the items sold at a much greater cost. *Id.* at ¶ 65-66 (forcing parties to refurbish their homes after shedding their contested items for a pittance at auction does not fulfill the court's function to divide property fairly and equitably). We thus concluded that the auction order was

---

[2]Notably, the Third District pointed out that the order was actually to obtain an appraisal of the property or it would be sold at auction. *Noll v. Veti,* 3d Dist. No. 14-05-11, 2005-Ohio-5754 at ¶ 26. And, the appellant in *Noll* had actually agreed to the order on the record. *Id.* at ¶ 27.

an abuse of discretion. *Id.* at ¶ 67-69 (even more so regarding items of separate property).

**{¶56}** Here, the wife testified that she was waiving the requirement that the court determine the worth of the following items that remained at the marital residence that she desired: (1) a full-size couch (to match the identical full-size couch she already took); (2) the living room curtains (to match the couch); (3) a curio cabinet (where she stored her porcelain bird collection before she moved her birds out and where their son now stored his sports memorabilia); (4) a roll-top desk (which is one of three desks retained by the husband and which is in the son's bedroom); and (5) the green Craftsman garden tractor. (Mar. 8, 2012 Tr. 21, 23-26).[3]

**{¶57}** The husband testified that he wished to be awarded certain items that the wife took from the residence: (1) a different division of the Thomas Kinkade pictures (he had four small, she had two large, and he wanted each to have two small and one large); (2) approximately 15 pewter Christmas ornaments (from his place of employment); (3) a video camera; and (4) a ceramic John Deere statue of a boy (that the paternal grandmother bought for their son, who lived with the husband). (May 3, 2012 Tr. 31-32, 37).[4]

**{¶58}** As can be seen, there was a minimal number of items in dispute. The order that all personalty would be sold merely because of the dispute over these few items is unreasonable. Although the parties can agree to exclude items, this does not acknowledge the prior agreement that occurred by implication (by failing to contest during the trial and by only specifically contesting certain items that each party had). As the husband fears, the wife can now refuse to agree on anything and everything will be sold.

**{¶59}** We conclude that it was clearly unreasonable, arbitrary, and unconscionable to fail to award to each party the personalty that each party

---

[3]She also asked for the gas grill and the fish tank. However, the husband agreed from the stand that the wife could have the fish tank and the gas grill. (May 3, 2012 Tr. 49).

[4]There were originally some other items on his list, which he created in January of 2012 after the wife retrieved some property. However, his testimony showed a decision to only seek the items for which testimony was specifically provided. (May 3, 2012 Tr. 32, 37-38, 49).

uncontestedly possessed. With the exception of the few disputed items listed above. The parties either expressly or implicitly (by failing to present testimony) agreed on the division of almost all of their belongings. The uncontested items must be distributed accordingly on remand. This means (with the exception of the disputed items listed above) each party will maintain what they possess (except the husband will transfer wife the fish tank and the gas grill to wife as he agreed). We thus reverse the order of auction.

**{¶60}** As we are reversing the entire auction order, the disputed items must also be distributed. That is, in remanding for distribution of the uncontested items, we have decided to include the few disputed items in the scope of our remand as well because, under all of the circumstances existing in this case, we have concluded that it was unreasonable to order an auction of any items.

**{¶61}** The asset-to-debt ratio here was the opposite as that existing in the *Yerian* case. No one was threatening bankruptcy, and no one quit working; in fact, the testimony suggested that both parties enjoyed job stability. The assets were listed in the decree, and it was specifically noted that the parties' lived a fairly debt-free life. Selling the few items at auction for a minimal amount was unnecessary here and gives rise to some unreasonable results.

**{¶62}** For instance, ordering the sale of a grandparent's ceramic gift to a child because the parties to a contested divorce cannot agree where it should be displayed, does not appear to be a reasonable resolution under the facts of this case. And, as to the green tractor, the husband testified that he purchased it with the inheritance from his father and he wanted to keep it, noting that his son uses it for spare parts. (Tr. 49, 57-58). He provided documentary evidence of the $1,500 inheritance from his father in 1998. The wife did not contradict the husband's testimony that he purchased the green tractor with his separate property inheritance from his father.

**{¶63}** It is not the role of the appellate court to conduct an item by item review of the property divided. *Kachmar v. Kachmar*, 7th Dist. No. 08MA90, 2010-Ohio-1311, ¶ 69; *Hiscox v. Hiscox*, 7th Dist. No. 07CO7, 2008-Ohio-5209, ¶54-55 (the

second appeal of the *Hiscox* case after our remand). Thus, we leave the division of the items in dispute to the trial court on remand.

{¶64} In conclusion, it is the domestic relations court's obligation to divide the property fairly and equitably. Only certain items were placed in dispute at trial. The parties set forth testimony describing the few contested items and why they believed it was equitable for them to receive certain items. The lack of precise assigned values for these items would not preclude division of the actual items as equal division is not required and an equitable division is sufficient. There is a wide spectrum of fairness considering the testimony presented on the few disputed items and many reasonable distribution possibilities.

{¶65} Merely because the parties waive appraisal but cannot agree on a few items, an auction, where those items will sell for a fraction of their worth, should not be their punishment; rather, the result should typically be that the parties have consented to leave distribution wholly to the trial court. Some reasonable division would not have been burdensome to the court. This is the purpose of a divorce court: to settle the property distribution because the parties cannot. This is not a dissolution where it is required that the parties agree. Under all of the particular facts and circumstances existing in this case, we find it unreasonable to order all personalty (or even the few pieces of disputed personalty) sold at an auction.

{¶66} For the foregoing reasons, the judgment of the trial court is affirmed as to spousal support and the division of the equity in the marital residence. The trial court's judgment is reversed as to the auction order and remanded for actual distribution of personalty.

Donofrio, J., concurs.
Waite, J., concurs.