[Cite as *Risch v. Samuel*, 2020-Ohio-1094.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JESSE RISCH, | : | APPEAL NO. C-190159 |
| | | TRIAL NO. 17CV-29060 |
| Plaintiff-Appellee/ | : | |
| Counterclaim-Defendant, | | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| TOYA SAMUEL,[1] | | |
| | : | |
| Defendant-Appellant/ | | |
| Counterclaim-Plaintiff. | : | |


Civil Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: March 25, 2020


*Stuart L. Richards,* for Plaintiff-Appellee/Counterclaim-Defendant,

*Charles H. Bartlett, Jr.*, for Defendant-Appellant/Counterclaim-Plaintiff.

---

[1] The defendant-appellant/counterclaim-plaintiff's surname is spelled "Samuel" and "Samuels" alternatively throughout the record.  We adopt  the spelling contained in her appellate brief.

**MYERS, Judge.**

{¶1}    Toya Samuel appeals the judgment of the Hamilton County Municipal Court in this dispute with her former landlord, Jesse Risch.  In two assignments of error, Samuel argues that the court erred by failing to award her attorney fees for Risch's improper attempt to recover possession of the premises and by failing to give her credit for a security deposit.

*Background*

{¶2}    Beginning in 2011, Samuel's mother, Janie Samuel, rented the second and third floors of a building at 869 Hutchins Avenue to house disabled residents of a group home she operated.  She paid $750 per month in rent.

{¶3}    In April 2017, Risch purchased the building, and Janie Samuel continued to pay rent of $750 per month as a month-to-month tenant.  Rent was due on the 15th of each month.  The parties did not execute a written lease agreement.

{¶4}    According to Risch, Janie Samuel agreed to pay $200 toward the property's quarterly water bill and she did so in June 2017.  After Janie Samuel died in August 2017, Risch met Samuel for the first time and explained that her mother had been willing to pay $200 per quarter for the water bill.

{¶5}    Samuel testified that she had been operating the group home with her mother for many years and her mother had never agreed to pay Risch any amount toward the property's water bills.  But Samuel paid Risch $200 for the September 2017 quarterly water bill.

{¶6}    In December, Risch approached Samuel with the most recent water bill in the amount of $427, and Samuel refused to pay any portion of it.  On December 16, 2017, Samuel tendered the December rent payment of $750, but Risch refused to accept it because Samuel would not pay any portion of the water bill in addition to the rent.  Risch advised Samuel that he was going to proceed with

eviction. That same day, Risch posted a notice that Samuel was to leave the premises in three days. Risch did not provide a 30-day notice terminating the month-to-month tenancy.

{¶7} Less than a week later, on December 22, 2017, Risch filed for eviction and for monetary relief. On January 9, 2018, Samuel filed an answer and paid a rent bond of $750 to the clerk of courts.

{¶8} According to Samuel, all of her clients residing at Risch's property moved out by the end of January 2018. On February 10, 2018, Samuel rented a truck and paid three individuals $40 each to help her move. When she arrived at the property, she discovered that Risch had changed the locks and had left a note on the door asking that he be contacted for access. Samuel was unable to reach Risch so she went to the police department to report the situation. By the time Risch responded, Samuel had already released her helpers and had abandoned her effort to move out that day.

{¶9} After Risch changed the locks back, Samuel returned to the property on February 17 and began removing items from the second and third floors. After she moved a stove and refrigerator to her truck, Risch arrived and claimed that he owned the refrigerator. Although Samuel disputed Risch's ownership of the refrigerator, she returned it to the property. Samuel was unable to move her washer and dryer from the basement through the interior of the property because of the confines of the basement stairwell. And due to the placement of Risch's utility trailer on the driveway, the washer and dryer could not be moved from the exterior basement door to Samuel's truck. According to Samuel, she had no alternative other than to leave her washer and dryer behind.

{¶10} On February 27, 2018, Samuel filed a counterclaim against Risch for violations of R.C. Chapter 5321 and for conversion of personal property, specifically,

the washer, dryer, and refrigerator. In addition to compensatory damages, Samuel sought punitive damages and attorney fees.

{¶11} After a bench trial, the trial court ruled in favor of Risch on his claim for unpaid rent for December 2017 and January 2018, awarding him $1,500. The court ruled in favor of Samuel on Risch's claims that Samuel owed him money for cleaning expenses, for damages that occurred to the property, and for water bills. The court denied both parties' claims as to the refrigerator, finding that the evidence was insufficient to establish which party owned it.

{¶12} In addition, the court ruled in favor of Samuel on her counterclaim for conversion of the washer and dryer, awarding her $184 for the washer and dryer, and $120 for expenses related to her unsuccessful moving attempt on February 10, for a total of $304. The court found that even though Risch's conduct constituted the tort of conversion, it did not constitute a violation of R.C. 5321.15(B) because it had not been done for the purpose of recovering rent payments. The court declined to award punitive damages or attorney fees for conversion because it found insufficient evidence from which it could conclude that Risch had acted with fraudulent intent, malice, or insult. And, having found no violation of R.C. 5321.15(B), the court declined to award statutory attorney fees under R.C. 5321.15(C). The court ordered that the $750 paid as a bond by Samuel be released to Risch, leaving a net balance on the judgment in favor of Risch of $446.

*Attorney Fees*

{¶13} In her first assignment of error, Samuel argues that the trial court erred by failing to award her attorney fees pursuant to R.C. 5321.15(C) and by failing to take evidence on the hours of her attorney's service necessitated by Risch's violation of R.C. 5321.15(A). Samuel contends that the court denied her statutory attorney fees upon its determination that Risch had not violated R.C. 5321.15(B),

4

even though its factual findings supported a determination that Risch had violated R.C. 5321.15(A). We agree.

{¶14} R.C. 5321.15(C) provides that "[a] landlord who violates this section is liable in a civil action for all damages caused to a tenant * * * together with reasonable attorneys fees." Under the plain language of the statute, an award of attorney fees is mandatory where a landlord violates R.C. 5321.15(A) or (B). R.C. 5321.15(C); *Conner v. Conner*, 2018-Ohio-2698, 114 N.E.3d 281, ¶ 21 (4th Dist.); *Gaitawe v. Mays*, 2d Dist. Montgomery No. 25083, 2012-Ohio-4749, ¶ 11; *Crenshaw v. Rowland*, 196 Ohio App.3d 717, 2011-Ohio-5942, 965 N.E.2d 341, ¶ 15 (6th Dist.).

{¶15} Under R.C. 5321.15(A), a landlord may not initiate any act against a tenant for the purpose of recovering possession of residential premises, except as provided in R.C. Chapters 1923, 5303, and 5321. These acts include "termination of utilities or services, exclusion from the premises, or threat of any unlawful act." R.C. 5321.15(A).

{¶16} To terminate a month-to-month tenancy, R.C. 5321.17(B) requires a landlord to provide the tenant notice of termination at least 30 days "prior to the periodic rental date." R.C. 5321.17(B). If the tenant remains in possession of the premises after the expiration of the 30-day period, the landlord must serve the tenant with a proper three-day notice under R.C. 1923.04(A) before initiating an eviction action.

{¶17} In this case, the trial court specifically found that Risch had improperly sought to evict Samuel without first affording her the 30-day notice of termination required by R.C. 5321.17(B). Risch's attempt to evict Samuel in three days, therefore, constituted a threat of an unlawful act in violation of R.C. 5321.15(A). In addition, the trial court found that Samuel had intended to move out on February 10 and that Risch's changing of the locks had denied her the ability to move that day. By awarding Samuel damages for the costs associated with her unsuccessful attempt

to move on February 10, the trial court implicitly found that Risch had wrongfully excluded her from the property on that date in violation of R.C. 5321.15(A). Because the trial court found that Risch violated R.C. 5321.15(A), an award of reasonable attorney fees was mandatory pursuant to R.C. 5321.15(C). *See Conner*, 2018-Ohio-2698, 114 N.E.3d 281, at ¶ 21. Therefore, we hold that the trial court erred by failing to award Samuel reasonable attorney fees pursuant to R.C. 5321.15(C). We sustain the first assignment of error.

## *Security Deposit*

{¶18} In her second assignment of error, Samuel argues that the trial court erred by failing to give her credit for a security deposit when it awarded damages to Risch. She asserts that under R.C. 5321.16, a security deposit must be returned to a tenant or applied to past due rent and damages suffered by the landlord.

{¶19} R.C. 5321.16 provides in relevant part:

(B) Upon termination of the rental agreement any property or money held by the landlord as a security deposit may be applied to the payment of past due rent and to the payment of the amount of damages that the landlord has suffered by reason of the tenant's noncompliance with section 5321.05 of the Revised Code or the rental agreement. Any deduction from the security deposit shall be itemized and identified by the landlord in a written notice delivered to the tenant together with the amount due, within thirty days after termination of the rental agreement and delivery of possession.

{¶20} Samuel does not contend that Risch violated R.C. 5321.16(B) by wrongfully withholding a security deposit. But she cites the statute as support for the proposition that, given the evidence presented at trial, the trial court should have given her credit for a security deposit against the damages it awarded to Risch. In essence, her assignment of error challenges the weight of the evidence supporting the

6

trial court's determination, implicit in its denial of her claim, that she failed to prove her entitlement to credit for the security deposit.

{¶21} When reviewing the manifest weight of the evidence in a civil case, we must determine whether the trial court's judgment was supported by the greater amount of credible evidence, and whether the plaintiff met its burden of persuasion, which is by a preponderance of the evidence. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19. We are mindful that, in a bench trial, "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶22} At trial, Samuel testified that her mother had paid a $750 security deposit to the former owner of Risch's property. She presented no documentation of her mother's lease with the former owner or of the security deposit paid to the former owner. Risch testified that when he bought the property, no deposit had been transferred to him and he had no record of a deposit having been paid.

{¶23} In its written decision, the trial court found that "[m]inimal evidence was introduced regarding Janie Samuel[']s rental history." Although the decision made no specific mention of the security deposit, its silence on the issue is tantamount to a denial on that aspect of the claimed damages. *See Burkhart v. Burkhart*, 191 Ohio App.3d 169, 2010-Ohio-5363, 945 N.E.2d 557, ¶ 30 (10th Dist.). The only evidence that a security deposit had been paid was Samuel's testimony, which the trial court was entitled to disbelieve. *See id.*; *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The court could reasonably have concluded that the evidence did not support Samuel's claim that a deposit had been paid. Upon our review of the record, we cannot say that the trial

court's judgment in this regard was against the manifest weight of the evidence. Consequently, we overrule the second assignment of error.

*Conclusion*

**{¶24}** We reverse the judgment of the trial court denying Samuel attorney fees under R.C. 5321.15(C) and remand this matter for a determination of the amount of reasonable attorney fees due to Samuel. We affirm the judgment in all other respects.

Judgment accordingly.

**ZAYAS, P.J.,** and **CROUSE, J.,** concur.

Please note:

The court has recorded its own entry this date.