[Cite as *Amba Invests. v. Clark*, 2022-Ohio-43.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| AMBA INVESTMENTS, LLC, | : | |
| Appellee, | : | CASE NO. CA2021-02-016 |
| | : | O P I N I O N |
| - vs - | | 1/10/2022 |
| | : | |
| COTY CLARK, | : | |
| Appellant. | : | |

CIVIL APPEAL FROM BUTLER COUNTY AREA III COURT
Case No. CVG2000151

Cornetet, Meyer, Rush & Stapleton, and Michael Spillane, for appellee.

Coty L. Clark, pro se.

**BYRNE, J.**

{¶1} Coty Clark appeals from the decision of the Butler County Area III Court, which dismissed his counterclaims against his former landlord, Amba Investments, LLC. For the reasons discussed below, we affirm.

**I. Factual and Procedural History**

{¶2} In June 2019, Clark and Amba Investments, LLC ("Amba") entered into a lease agreement concerning residential property located in West Chester, Ohio ("the

home").  In return for possession of the home, Clark agreed to pay Amba $1,650 monthly.  Clark also paid Amba a security deposit equaling one month's rent.

{¶3}    Clark failed to pay rent in December 2019 and January 2020.  On January 15, 2020, Amba, through its representative, Usha Aggarwal, told Clark that he needed to vacate the home and that he had until January 20, 2020, to move out.  However, on Friday, January 17, 2020, after further communications, Aggarwal informed Clark that he needed to leave the home that day.  Clark began moving that day and was able to move most of his possessions out of the home, except for a bed and a television stand.  On January 20, 2020, Clark dropped off the home's keys at the Amba office and provided Amba with his forwarding address.  In an email sent that morning, Clark offered to perform further cleaning of the home and discussed coming back later that week to obtain his remaining possessions.  In an email sent on January 22, 2020, Aggarwal asked Clark to remove his remaining possessions and stated, "Let me know the time you will do this."

{¶4}    On January 28, 2020, Amba filed, in Butler County Area III Court, a complaint for forcible entry and detainer of the home and for damages stemming from Clark's failure to pay rent.  The trial court set a hearing on the forcible entry and detainer portion of Amba's claim.  Clark failed to appear or otherwise defend against the forcible entry and detainer claim and the court granted Amba a writ of possession.  The court continued the hearing on Amba's cause of action for damages.

{¶5}    Clark subsequently filed an answer and counterclaims against Amba alleging two causes of action.[1]  First, Clark alleged that Amba violated his rights under Chapter 5321 of the Revised Code by failing to provide him with written notice of the disposition of his security deposit.  He sought monetary damages arising out of Amba's failure in the amount

---

1. The pleadings were untimely and Amba moved to strike the counterclaims.  The court denied the motion due to the Ohio Supreme Court's Covid-19 tolling order.

- 2 -

of $3,300, which was the amount of his $1,650 security deposit multiplied by two. Second, Clark claimed that his eviction was unlawful because Aggarwal told him that he needed to leave the home earlier than he expected and because he felt threatened. He also sought monetary damages in the amount of $10,000 for "pain, suffering, worry and emotional anguish as a direct result of being forced to move out in less than 24 hours," plus "$600 for having to eat out for 30 days for meals as opposed to being able to cook meals at home," and $1,000 to replace a bed and television stand "which were not able to be moved out on such short notice."

{¶6} A magistrate conducted a hearing on the parties' competing claims. Aggarwal testified on behalf of Amba and stated that Amba's claim for damages against Clark totaled $6,203.70. This amount consisted of unpaid rent under the lease agreement, contractual late fees, and NSF (non-sufficient funds) fees. She further testified that Amba's total damage claim would be reduced by Clark's security deposit of $1,650 and by a payment of $199 made by Clark in January 2020. Thus, Amba sought damages totaling $4,354.70.

{¶7} On cross-examination, Aggarwal agreed that on January 15, 2020, she told Clark that he had until January 20 to move out of the home. She further admitted that on January 17 she told Clark that he needed to move out by 5:00 p.m. that same day.

{¶8} Aggarwal also agreed that on January 20, 2020, Clark returned the home's keys to the Amba office, and that Clark provided her with a forwarding address. Aggarwal admitted that Amba had not sent Clark an itemized list regarding the disposition of his security deposit.

{¶9} On redirect, Aggarwal stated that with respect to Clark's possessions left at the home, she had asked him to retrieve his items, but he never responded. She testified that Amba filed the eviction because Clark left his personal property at the home. Aggarwal did not disconnect the utilities, did not change the locks, and only retook possession of the

home after the court issued its February order.

{¶10} During his case-in-chief, Clark testified that when he went to Amba's office to drop off the keys, Aggarwal and another person repeatedly asked him how he would pay the past due rent. He said that the meeting was "intense" and that he was not comfortable going back to the home to recover his remaining possessions after the office meeting.

{¶11} On cross-examination, Clark admitted that he owed at least $3,300 in back rent. Clark also admitted that he was not expecting to get his security deposit back but was expecting that his security deposit would be applied towards what he owed.

{¶12} At the conclusion of the hearing, the magistrate dismissed Clark's counterclaims. With respect to the security deposit notice, the magistrate stated that Amba "only [had] to give you an itemized list if there is any money that is due back to you from your security deposit. Because there's no money due back because your rent was more than your security deposit, they didn't do anything wrong regarding your security deposit." With respect to the alleged unlawful eviction, the magistrate found that Amba took no unlawful action to evict Clark and had only sought eviction through the court system.[2] The magistrate found for Amba on its claim for damages, but indicated it would deduct the NSF charges, thus awarding judgment to Amba in the amount of $4,214.70.

{¶13} Clark objected to the magistrate's decision. Regarding the written security deposit notice, Clark argued that the Revised Code did not exempt a landlord from providing the written notice when the tenant owed rent. Concerning the unlawful eviction claim, Clark attached an exhibit of text messages he had exchanged with Aggarwal, which included texts by Aggarwal that he argued implied a threat of unlawful eviction. However, Clark did not seek to or have the text messages admitted at the hearing before the magistrate.

---

2. The magistrate explained, "I know you believe maybe they strong-armed you and pressured you to moving out, but they took no overt force you other than talking to you." [Sic.]

{¶14} The court overruled Clark's objections and adopted the magistrate's decision, agreeing with the magistrate's rationale as expressed at the hearing. There was no indication in the decision that the court agreed to consider the text messages.

{¶15} Clark appeals, raising two assignments of error.

## II. Law and Analysis

{¶16} Assignment of Error No. 1:

{¶17} THE MAGISTRATE ERRED IN REFUSING TO APPLY O.R.C. §5321.16.

{¶18} Clark contends that the area court's decision, which expressly adopted the magistrate's reasoning for dismissing his first counterclaim based on R.C. 5321.16, was in error because R.C. 5321.16 "does not grant any exceptions to the landlord's requirement of furnishing me with the itemized list of deductions." Amba admits it did not provide Clark with the written notice but argues that Clark was not entitled to any damages.

{¶19} R.C. 5321.16 provides, in relevant part:

> (B) Upon termination of the rental agreement any property or money held by the landlord as a security deposit may be applied to the payment of past due rent and to the payment of the amount of damages that the landlord has suffered by reason of the tenant's noncompliance with section 5321.05 of the Revised Code or the rental agreement. *Any deduction from the security deposit shall be itemized and identified by the landlord in a written notice delivered to the tenant together with the amount due, within thirty days after termination of the rental agreement and delivery of possession.* The tenant shall provide the landlord in writing with a forwarding address or new address to which the written notice and amount due from the landlord may be sent. If the tenant fails to provide the landlord with the forwarding or new address as required, the tenant shall not be entitled to damages or attorneys fees under division (C) of this section.
>
> (C) If the landlord fails to comply with division (B) of this section, the tenant may recover the property and money due him, together with damages in an amount equal to the amount wrongfully withheld, and reasonable attorneys fees.

(Emphasis added.)

{¶20} Based on the plain language of the statute, we find that the magistrate was incorrect when he stated that Amba "only [had] to give you an itemized list if there is any money that is due back to you from your security deposit" and that "[b]ecause there's no money due back because your rent was more than your security deposit, they didn't do anything wrong regarding your security deposit." In fact, Amba was required to provide Clark with a written notice itemizing the deductions from his security deposit. Clark is correct that the statute does not include any language relieving the obligation to provide such written notice when a tenant owes more than the security deposit in past due rent – that is, when the landlord is permitted to retain the entire amount of the security deposit. A landlord's lawful application of the entire security deposit to past due rent is a "deduction from the security deposit" that "shall be itemized and identified by the landlord in a written notice* * *." R.C. 5321.16(B).

{¶21} Before we proceed to the next step of our analysis we pause to address our colleague's concurring opinion. Our colleague argues that Amba was not required to give Clark the R.C. 5321.16(B) written, itemized statement because Clark's entire security deposit was lawfully retained by Amba. Our colleague bases this conclusion on his view that "in this matter * * * there were no deductions made from the security deposit." We disagree. The entire amount of the security deposit – 100 percent – was deducted in order that it could be applied to past due rent, as authorized by R.C. 5321.16(B).

{¶22} We also disagree with our colleague's conclusion that R.C. 5321.16(B)'s phrase "together with the amount due" means that the written statement must only be provided when "some part of the security deposit is owed the tenant" – that is, when the amount due is greater than zero. We do not see support for this conclusion in the statute's text. In a case like this one, where the entire security deposit is retained by the landlord to be applied to past due rent, the entire amount of the security deposit is a "deduction from

the security deposit" that "shall be itemized" in a written statement, which must indicate that the "amount due" to the tenant is zero.[3]  R.C. 5321.16(B).

{¶23}  Our view of the plain meaning of the statute's text is supported by the Ohio Supreme Court's opinion in *Vardeman v. Llewellyn*, 17 Ohio St.3d 24 (1985).  In *Vardeman* the supreme court stated that the General Assembly in enacting R.C. 5321.16(B) intended, among other things, "to require prompt refunds of all or part of the security deposit or, in the alternative, to provide an explanation to the tenant why *all or any part* of the deposit was not returned to him." (Emphasis added.) *Id.* at 28.  The supreme court's use of the phrase "all or any part" indicates that the R.C. 5321.16(B) written statement must be provided to a tenant even when "all" of the security deposit is retained by the landlord, as is the case here.[4]

{¶24}  We agree with our colleague's statement that "appellate review should resist the temptation to rewrite a statute to be more comprehensive or provide a more thorough meaning," citing *State ex rel. Cable News Network, Inc. v. Bellbrook-Sugarcreek Local Schools*, 163 Ohio St.3d 314, 2020-Ohio-5149, ¶ 11.  Consistent with that admonition, we have simply read the statute's text for what it says and applied the text as written.

{¶25}  Now we return to Clark's argument.  Though Clark did not make the point explicitly in his appeal brief, Clark seems to argue that because the trial court was incorrect in its characterization of a landlord's obligations under R.C. 5321.16, we should reverse and order that Clark receive the monetary damages he alleges arise out of Amba's failure to

---

3.  Our concurring colleague's interpretation of the statute would require that landlords provide the itemized, written statement to tenants when 10, 50, or 99 percent of the security deposit is deducted in order to be applied to past due rent, but would not require such notice when 100 percent of the security deposit is deducted to be applied to past due rent.  We find no support for such an interpretation in the text of R.C. 5321.16(B).

4.  Even if, as our concurring colleague argues, the *Vardeman* language we have quoted in ¶ 23 is dicta, the language is certainly persuasive because it is entirely consistent with the plain text of R.C. 5321.16(B).

comply with R.C. 5321.16(B). The Ohio Supreme Court construed R.C. 5321.16(B) and (C) in *Vardeman*. The supreme court held, "the failure to comply with R.C. 5321.16(B) and to provide the tenant with a list of itemized deductions renders the landlord liable for double damages only as to the amount wrongfully withheld and not as to the entire amount of the security deposit." *Vardeman* at 29. The court defined "amount wrongfully withheld" to mean the amount of the security deposit above any deduction that the landlord had the right to lawfully deduct from the security deposit. *Id.* The court further held that attorney fees should only be awarded where a tenant is entitled to damages because the landlord wrongfully withheld some amount. *Id.*

{¶26} In this case, the evidence introduced at the hearing showed that the entire security deposit was lawfully withheld and could be lawfully applied to Clark's past due rent. Accordingly, Amba is not liable to Clark for damages or attorney fees for its failure to provide Clark with notice under R.C. 5321.16(B), because there was no amount wrongfully withheld. *Vardeman* at 29.

{¶27} Accordingly, while the magistrate made incorrect statements about a landlord's obligations under R.C. 5321.16 that were expressly adopted by the trial court, the magistrate and the trial court still reached the correct *result* – that is, dismissal of Clark's first counterclaim – because Clark was owed no damages under that counterclaim.[5] We therefore overrule Clark's first assignment of error and affirm the trial court's dismissal of Clark's first counterclaim.

{¶28} Assignment of Error No. 2:

{¶29} THE MAGISTRATE ERRED IN RULING THE EVICTION WAS NOT UNLAWFUL (O.R.C. §5321.15).

---

5. Clark did not request in his counterclaim's prayer for relief that the court require Amba to provide the itemized statement to him. He only requested damages that he was not owed.

{¶30} Clark argues that the court erred in finding that Amba did not unlawfully evict him. He notes that Aggarwal told him that he had to move out by 5:00 p.m. on January 17, 2020, and he argues that he "felt threatened" by text messages sent to him by Aggarwal.

{¶31} Amba argues that Clark failed to present evidence at the hearing that Amba took any unlawful action against him for purposes of recovering the home.

{¶32} Clark cites R.C. 5321.15, which states:

(A) No landlord of residential premises shall initiate any act, including termination of utilities or services, exclusion from the premises, or threat of any unlawful act, against a tenant, or a tenant whose right to possession has terminated, for the purpose of recovering possession of residential premises, other than as provided in Chapters 1923., 5303., and 5321. of the Revised Code.

(B) No landlord of residential premises shall seize the furnishings or possessions of a tenant, or of a tenant whose right to possession has terminated, for the purpose of recovering rent payments, other than in accordance with an order issued by a court of competent jurisdiction.

(C) A landlord who violates this section is liable in a civil action for all damages caused to a tenant, or to a tenant whose right to possession has terminated, together with reasonable attorneys fees.

{¶33} Upon review, we do not find that Clark demonstrated that Amba or its representative engaged in any unlawful act or made any unlawful threat for purposes of recovering the home in violation of R.C. 5321.15. While Aggarwal admits that she requested that Clark move out of the home by 5:00 p.m. on January 17, 2020, after having previously asked him to move out by January 20, 2020, Aggarwal did not combine this request with any act or threat made unlawful under the statute. Clark contends that he "felt threatened" by Aggarwal's request that he move out so quickly. He also contends that "I was concerned for my safety and the safety of my belongings [,]" and he states that "Because of those feelings, I left." But Clark's subjective feelings do not demonstrate a

violation of the statute.[6]

{¶34} The evidence at the hearing indicated that Amba did not take any unlawful act or make any unlawful threat. Amba did not disconnect Clark's utilities or services, change his locks, or remove his possessions. Amba also did not threaten to do any of those acts or similar unlawful acts. Aggarwal indicated that Amba filed the forcible entry and detainer action after Clark returned his keys and moved out only because Clark left some of his possessions at the home and did not remove those possessions when given the opportunity. Additionally, even if Clark had established an unlawful act by Amba, he failed to present any evidence to support his claim of damages.

{¶35} For the foregoing reasons, we overrule Clark's second assignment of error.

### III. Conclusion

{¶36} Judgment affirmed.

M. POWELL, J., concurs.

PIPER, P.J.., concurs separately.

**PIPER, P.J., concurring separately.**

{¶37} I too affirm the trial court and overrule Clark's assignment of errors. I agree with my colleagues "the entire security deposit was lawfully withheld and could be lawfully applied to * * * past due rent." However, I do not agree the trial court was incorrect in accepting the magistrate's rationale which correctly referenced the text of R.C. 5321.16(B). The magistrate read the statute as written, rather than how it could have been written. Therefore, I am not critical of the magistrate's comments.

{¶38} In applying the statute as written, R.C. 5321.16(B) preliminarily authorizes *at*

---

6. Notably, Clark admitted that he knew that "they technically couldn't force me out until the court granted an eviction," and he moved out at Aggarwal's request anyway.

*the time* the rental agreement is terminated, a landlord can apply the security deposit toward payment of past due rent. The statute reads, "upon termination of the rental agreement * * * a security deposit may be applied to the payment of past due rent * * *." R.C. 5321.16(B). The record reveals that is what happened here. The right to apply the security deposit to past due rent is not conditional upon, or qualified by, any other text. There are no words in the statute creating an antecedent.

{¶39} Next R.C. 5321.16(B) establishes that a written notice must be forwarded together with the amount due the tenant. The notice is to itemize and identify *deductions from* the security deposit and return to the tenant whatever is left. R.C. 5321.16(B) specifically directs "Any deduction from the security deposit shall be itemized and identified * * * delivered to the tenant together with the amount due * * *." Contrary to our lead opinion's interpretation of the statute's text, the statute significantly does not state "the amount due, if any." The phrase "together with the amount due" clearly requires that after the itemized deductions some part of the security deposit is to be returned to the tenant.

{¶40} Applying the whole security deposit toward payment for past due rent when the rental agreement is terminated is not the same as subsequently identifying and listing deductions *from* the security deposit.[7] Taking portions of something is not the same as taking the whole. The statute does not call for an accounting of the security deposit. It does however call for an accounting of deductions *from t*he security deposit. Granted it would be better or more comprehensive if the statute required an accounting of all or any part of the security deposit, but it does not.[8]

---

7. "From" is a functional word used to indicate a separation, subtraction, or removal; a synonym is "out of". Merriam-Webster.com, definition of "from," https://www.merriam-webster.com/dictionary/from (accessed January 3, 2022), and Merriam-Webster.com, synonym of "from," https://www.merriam-webster.com/thesaurus/from (accessed January 3, 2022).

8. Should the tenant be due the entire security deposit or any part of the security deposit and it is not returned

{¶41} My friends in the majority opinion interpret the text of the statute as requiring that when the whole security deposit is retained and there no itemized deductions from the security, the statute means the whole security deposit is to be deducted from the whole security deposit. This construction then requires an additional interpretation that sending along the amount due means in some circumstances the money due, yet in other circumstances, it means sending zero. ¶ 22 above. The requirement that after individual deductions are made the amount due be sent the tenant, clearly means the tenant is to get the money he or she is owed.

{¶42} My colleagues write into the text of the statute an "obligation" to provide written notice of the amount owed when *more than* the security deposit amount is owed. However, the balance owed beyond the security deposit is a topic not addressed in the text of the statute as written. A landlord can seek damages greater than the security deposit in subsequent legal proceedings and a tenant will be served with notice of the amount of damages claimed at that time. Additionally, in this matter, as the magistrate correctly noted, there were no deductions made from the security deposit. The security deposit was admittedly legally retained when applied to past due rent.[9]

{¶43} When summarizing the purpose of the statute other courts have expressed verbiage that lends support for the majority's interpretation of the statute, yet I could find none specific to our facts holding the statute requires a written notice advising the tenant that the *entire* deposit was applied toward the past due rent; or that applying the entire

---

to the tenant, the landlord "wrongfully withholds" the money and is subject to the financial repercussions of R.C. 5321.16(C).

9. Lending to his credibility, Clark acknowledged he was aware of what happened to his security deposit, he knew it was applied to his considerable past due rent, and he had no expectation he was entitled to the security deposit or any part of it. Therefore, the magistrate's comments criticized by the majority have no relevance to our ultimate determination that no monies were wrongfully withheld. I would submit this criticism is therefore unnecessary dicta.

security deposit to past due rent is the same as taking deductions *from* the security deposit. Similarly, not located was authority holding that a notice must be sent advising the tenant of the amounts owed above the security deposit amount applied to past due rent.

{¶44} Our majority opinion uses *Vardeman v. Llewellyn*, 117 Ohio St.3d 24 (1985), as support in interpreting how the statute was intended to operate. However, the meaning of the words and phrases involved in today's discussion were not at issue or involved in *Vardeman's* holding. The phrase in *Vardeman* currently isolated for support was involved in a broad, general summary of the statute. The attempt at a "CliffsNotes" elucidation went beyond the holding, was not involved in the holding, and was clearly dicta. "Dicta" being expressions in an opinion which go beyond the facts necessary to determine the issues at hand and therefore not binding in subsequent cases as legal precedent. We have previously determined as a reviewing court, we are bound only by the text of a statute and not the dicta, even from the supreme court. *State v. Sallis*, 12th Dist. Clermont No. CA2019-12-092, 2020-Ohio-3924, ¶ 17 (where we followed Justice Kennedy's concurrence in *State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761).

{¶45} Sometimes reading text for what it says rather than for what it should say, is a difficult task. Admittedly, the statute was poorly drafted and could have created an obligation addressing more than just the deductions from the security deposit. It could have required an accounting of the security deposit regardless of whether it was returned or withheld. The statute could have clearly stated a landlord must give written notice as to the disposition of all or any part of the security deposit. However, the text of the statute is limited in what it articulates.

{¶46} Since the magistrate applied the words of the statute as written, I do not find the statements made to be incorrect. Nor do I find fault with the trial court in adopting the magistrate's rationale. While taking a slightly different approach and finding no controversy

with comments within the record, I concur with my colleagues' judgment as to both assignments of error but disagree with the meaning that has been attributed to the text of the statute and the resulting criticism of the magistrate in textually applying the statute.