[Cite as *Staley v. Phillips*, 2022-Ohio-2112.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| SHYNITA STALEY, | : | APPEAL NO. C-210438 |
| | | TRIAL NO. 20CV-20821 |
| Plaintiff-Appellant, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| BROOKE PHILLIPS, a.k.a. BROOKE | : | |
| BRYCE, | | |
| | | |
| Defendant-Appellee. | : | |


Civil Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: June 22, 2022


*Richard D. Feil, III*, for Plaintiff-Appellant,

*Paul Croushore*, for Defendant-Appellee.

**ZAYAS, Presiding Judge.**

{¶1}     Plaintiff-appellant Shynita Staley appeals the judgment of the Hamilton County Municipal Court which found in favor of defendant-appellee Brooke Phillips. Although we hold that the trial court erred in finding that Phillips did not violate the prohibition against self-help evictions in R.C. 5321.15(A), we affirm the judgment of the trial court for an alternative reason set forth below.

### Procedural History

{¶2}     On December 8, 2020, Staley filed a complaint against Phillips, asserting that Phillips had illegally entered Staley's residence without consent or reasonable notice and had proceeded to engage in "self-help" eviction. Accordingly, the complaint sought damages for violations of R.C. 5321.04(A)(8) and 5321.15(A). Phillips answered the complaint on December 21, 2020. A trial was held on June 2, 2021. The trial court found in favor of Phillips on both claims and dismissed the action with prejudice on July 20, 2021. In its entry, the trial court first addressed the issue of credibility and found Staley's testimony "wholly unworthy of belief." The trial court then found that Phillips had provided reasonable notice of her intent to enter the premises and found that Staley had no longer been residing at the premises when the locks were changed, and that any property remaining at the premises had been abandoned. Alternatively, the court found that even if Staley had not abandoned the property, there was no credible evidence of the monetary value of the items remaining in the residence.

{¶3}     Staley timely filed a notice of appeal on August 19, 2021. She now raises a sole assignment of error, arguing that the trial court erred in dismissing her complaint against Phillips because she did not abandon the premises. Staley does not

challenge the trial court's finding that Phillips gave her reasonable notice before entering the premises.

## Factual Background

**{¶4}** Staley was a tenant of 3430 Sunbury Lane ("the premises"), which she began renting from Phillips in 2013 pursuant to a written lease agreement. The tenancy changed to a month-to-month tenancy in 2017. The last month that Staley paid rent for the premises was August 2018. Both parties testified that Phillips gave Staley notice to leave the premises in September 2018. The notice was dated September 13, 2018, and informed Staley that Phillips intended to "terminate" the rental agreement, effective October 15, 2018. Staley testified that she did not vacate the premises by this date. At the time, she was working at Cincinnati Children's Hospital, and her work shifts were from 7:00 a.m. to 7:30 p.m.

**{¶5}** The record indicates that a three-day eviction notice was also given on September 23, 2018, for nonpayment of September rent, which had been due on September 15. This notice was not in the record. The following text-message exchange occurred between the parties on the dates indicated:

<u>September 30</u>

Phillips:    Good afternoon. As of Friday, September 28th you had not moved after having received the three day eviction notice on Sunday, September 23rd. You have refused to pay your rent due on September 15th and respond to my call to discuss your situation. Call me or text today. I have not gone downtown to file formal [sic] eviction.

Staley:    I have not refused to pay any rent and me not responding to you was the best for the situation so I started my search

3

to find somewhere to move. You gave me a 30 day notice to move on September 11, 2018 that was dated September 13, 2018. You expected rent for September and you wanted me to be out by the next month. I spoke to you the month prior and you gave me no warning that your intentions [sic] was to have me move. I have been here for almost 6 years and you know that I am a single parent who has 4 children in college which I have to help pay some of their bills. Never would I have thought I would be in this situation. I am in the active process of finding somewhere to move to. So no response from me was this best [sic] what else was there to say. Then you give me a 3 day notice now you have text again. This is the response that you are requesting.

Phillips: Thank you for responding to me. No, I gave you a thirty day notice for October 15th move date not September 13th. In August there was no indication of having you move. Remember you asked for a month to month lease a year ago because you were going to buy a home. I can give you a thirty day notice. The eviction notice is for not paying your rent which was due September 15th. I was surprised you had not responded to me. Trust me I understand being a single parent which is why I was willing to give you a break in September rent to aid in your moving.

4

<u>October 13</u>

Phillips: Good afternoon. What time can we do the walk through on Monday, October 15, 2018 since that is your final day at 3430 Sunbury Lane? Since your September rent in the amount of $775.00, which includes your late fee was never paid I do expect to have that full amount on Monday October 15, 2018.

Staley: I will be at work.

Phillips: I can be at 3430 Sunbury Lane at 7pm for the walk through. I will have a final checklist for us both to sign.

Staley: I will not be there and I prefer you actually come on a day that I will not be at work.

Phillips: What day next week is good for you to complete the walk through?

Staley: I'm off on Friday.

Phillips: I can meet you at 3:40pm at 3430 Sunbury Lane for the final walk through on Friday, October 19, 2018.

<u>October 16</u>

Phillips: Since your final day at 3430 Sunbury Lane was yesterday, Monday, October 15 per the vacate letter. I will be changing the locks on Wednesday, October 17. I will see you on Friday, October 19 @ 3:40 for the final walk through. It should last no more than 30 min. I will accept your September rent in cash or cashiers [sic] check. Total due $775.00.

Staley: I can't move until this weekend my kids will be home to help I can meet you Sunday afternoon to do the walk through then.

Phillips: I am sorry but you have to be completely out before the walk through on Friday, October 19—personal items and household items. I cannot accommodate your request. As I stated you were supposed to be out Monday, October 15. Your rent is 31 days overdue.

Staley: By law you can't just come change my locks you call legal aid which I already have so that they can advise you the number is 241-9400.

Phillips: You are right. I don't need to call legal. You were supposed to be out. You did not state that you were going to illegally occupy my property after the move out date of October 15th. I was clear in my communications with you but you were not. The reality is that when you stay in a property past the move out date you now are responsible to pay more money.

Staley: I am currently at work with kids lives in my hands I will be out this weekend. I am done texting.

<u>October 17</u>

Phillips: We will need to meet Sunday, October 21st at 3pm at 3430 Sunbury Lane for the final walk through. All of your personal and household items must be completely gone in order to do the walk through. Since you did not

6

> communicate that you would be staying in the property after the move out date- there is a fee per day of $24.19.

Staley: Welp [sic] I will let you know if all of my things are out.

Phillips: I will stop the daily fee at the day you are out. See you Sunday, October 21 at 3 pm at 3430 Sunbury Lane for the final walk through.

Staley: Like I said I will let you know you inconvenienced me in a huge way when this could have been discussed in August when you picked the rent up then you knew at that time this was your plans. Even though my kids are away at school they do still come home from time to time and it's hard to find somewhere in the area I would like to stay especially in 30 days. But you be blessed.

{¶6} Phillips testified that she went to the premises on October 21. The door was open, and she could see boxes. She said it looked like someone was moving. Phillips was upset because she had told Staley that she was supposed to "be out." She testified:

> And she said you were supposed to give me 60 days. This is not fair. I said – said you had asked for a month to month. And now I am going – you know, and this has been a year – and now I am going on and saying, hey, that is it. It is time for you to go. And she said that you don't have – basically you don't have a legal right. I do have a legal right. And she is very, very upset and she tells me I will let you know when I am leaving.

She told Staley that she was "going to have to evict her." Phillips claimed that she only had one foot in the door of the premises. She testified that they talked "at length" that day but it was the only time they had a "face to face." The last thing she said to Staley was that she had contractors coming the next day to give a quote for paint.

{¶7} Phillips went to the premises the next day at six o'clock, when she was scheduled to meet the contractor. She said she saw a "line of cars" moving furniture, one of which was Staley's. The cars were "driving out" and "stuffed" with personal belongings. She entered the premises for about 15 minutes. She testified that Staley returned "fairly quickly" but they did not have any interaction. She expressed that Staley was "actively moving" that day and said, "So it was kind of like you were, you know, stepping over things that were boxes." She claimed that the dining-room table and couches that had been there previously were now gone.

{¶8} Phillips testified that she served Staley notice in the "next week or so" that she was coming to paint. When she went into the premises to paint, she said there was an "overwhelming" amount of trash. There was a mattress on the floor with "junk" on top of it and televisions that would not turn on. She testified that they took the trash out and pushed the televisions to the center of the floor. They painted and repaired the walls over "a series of days." The following text-message exchange occurred on October 27:

> Phillips: Maintenance will be done tomorrow at 3430.
>
> Staley: Brooke my personal belongs are at 3430.
>
> Phillips: Your items will not be touched. Maintenance will also be
>
> done on Monday and Tuesday. I will be checking on the
>
> process.

Staley:      How can maintenance be done when I have things there that's [sic] is impossible that will not be touched. My things will be out this week you can wait.

Phillips:      I have given you notice for the work. Your items are not in danger.

Staley:      I don't trust that.

Phillips:      I am going to be there tomorrow.

Staley:      I don't trust that either. You know I have things everywhere you was [sic] there.

{¶9} Phillips changed the locks to the premises on October 29. She testified that she had told Staley she could pick up the remainder of her belongings and said she had the contactor there with the new key to let Staley into the premises. The following text-message exchange occurred on October 31:

Phillips:      You will be able to retrieve your personal belongings tomorrow from 3430 Sunburg [sic] Lane. You can come between 9am-7pm.

Staley:      Look you haven't taken me to court you can't change any locks and I will be at work.

{¶10} Phillips testified that the items in the premises were "disposed of" on October 31 and November 1. The following text-message exchange occurred between the parties on November 4:

Staley:      I called the police I will be taking you to court because things are missing and broken. You can't change the locks when you never took me to court.

Phillips:    You abandoned the property and left the property full of open bags of trash.

Staley:    No I didn't you didn't evict me the proper way so I'm taking you to court.

Phillips:    There were bugs because of the trash. You abandoned the property.

Staley:    It [sic] was no trash in here. The police have been here. I will be taking you to court. You had no legal right.

Phillips:    I have pictures and videos. Witnesses as well. Left some weed there as well.

Staley:    You still can't put my stuff out you have to take me to court you did it the wrong way I will be taking you to court. Where are my things [?]

Phillips:    No when you abandon a property I have legal claim to my property. I gave you notice for your things. You refused to come them [sic] on top of not paying your rent.

Staley:    I did not abandon anything told [sic] you I would have my things out by the weekend when you said maintenance was going to be here.

{¶11} Staley denied abandoning her property and denied voluntarily vacating the premises prior to November 4, 2018. When asked if any of the items on Staley's asserted list of items that remained in the premises were in fact present, Phillips agreed that she had found children's awards, a passport, and children's birth certificates. She said these items were put in the closet and eventually claimed by Staley. She also said there was some "paraphernalia," "Christmas stuff," a steamer,

and a vacuum cleaner, all of which were eventually taken by Staley. She admitted there was still clothing in the closet, but stated, "We didn't know that there was anything in the closet." When asked if any scrubs or "anything of that nature" remained in the premises, she replied, "perhaps." She agreed there was still a washer and dryer in the basement. When asked what she did with the washer and dryer, she replied, "The contractors." When asked about the condition of the washer and dryer, she stated, "I mean, it didn't look like – it wasn't a front loader." There was also a broken chair. Phillips agreed that she had told Staley on October 27 that her items would not be touched. When asked if she had provided Staley with a date certain of when she was going to throw away the remaining property, she replied, "I don't recall saying a date on there. I provided her a 24 hour notice. This is the day. Please get your things and she refused."

## Law and Analysis

{¶12} "In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a reasonable doubt, evidence must exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19. Sufficiency is a test of adequacy, meaning whether the evidence is legally sufficient to sustain a judgment, whereas weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other. *Id.* at ¶ 11-12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). Whether the evidence is sufficient is a question of law. *Id.* at ¶ 11, citing *Thompkins*. Thus, our review of sufficiency is de novo and asks whether some evidence exists on each element. *In re A.B.*, 1st Dist. Hamilton Nos. C-150307 and C-150310, 2015-Ohio-3247,

¶ 15, citing *Eastley*. "When reviewing the manifest weight of the evidence * * *, we must determine whether the trial court's judgment was supported by the greater amount of credible evidence, and whether the plaintiff met its burden of persuasion, which is by a preponderance of the evidence." *Risch v. Samuel*, 1st Dist. Hamilton No. C-190159, 2020-Ohio-1094, ¶ 21, citing *Eastley* at ¶ 19. In doing so, "[w]e are mindful that, in a bench trial, 'the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 777, 80, 461 N.E.2d 1273 (1984).

{**¶13**} R.C. 5321.15(A) provides, "No landlord of a residential premises shall initiate any act, including termination of utilities or services, exclusion from the premises, or threat of any unlawful act, against a tenant, or a tenant whose right to possession has terminated, for the purpose of recovering possession of residential premises other than as provided in Chapters 1923., 5303., and 5321. of the Revised Code." This prohibition applies even when only a tenant's personal possessions remain at the premises. *See Hansel v. Worrell*, 2d Dist. Montgomery No. 6955, 1981 Ohio App. LEXIS 12005, *1-2 (June 30, 1981); *see generally Altman v. Kardous Bayarri Properties, LLC*, 1st Dist. Hamilton No. C-200406, 2021 Ohio App. LEXIS 3118, *12 (Sept. 15, 2021) (" 'A tenancy is possession or occupancy of land by right or title, especially under a lease, which is a contract by which an owner or rightful possessor of real property conveys the right to use and occupy the property in exchange for consideration, usually rent.' " (Citation omitted.)); R.C. 5321.01(D) (" 'Rental agreement' means any agreement or lease, written or oral which establishes or modifies the terms, conditions, rules, or any other provisions concerning the use and occupancy of residential premises by one of the parties."); *Hiscox v. Hiscox*, 7th Dist.

Columbiana No. 06-CO-18, 2007-Ohio-1124, ¶ 38 ("A lease gives the lessee 'the right to use and occupy the property,' but does not give the lessee ownership of that property." (Citation omitted.))

**{¶14}** Staley argues that the trial court erred in finding that she had abandoned the premises. "Abandonment has been defined as 'property over which the owner has relinquished all right, title, claim, and possession with the intention of not reclaiming it or resuming its ownership, possession, or enjoyment.'" *McCain v. Brewer*, 2d Dist. Darke No. 2014-CA-8, 2015-Ohio-198, ¶ 17, citing *Doughman v. Long*, 42 Ohio App.3d 17, 21, 536 N.E.2d 394 (12th Dist.1987). " 'Abandonment requires affirmative proof of the intent to abandon coupled with acts or omissions implementing the intent. Mere non-use is not sufficient to establish the fact of abandonment, absent other evidence tending to prove the intent to abandon.' " *Id.*, citing *Perez Bar & Grill v. Schneider*, 9th Dist. Lorain No. 11CA010076, 2012-Ohio-5820, ¶ 32.

**{¶15}** In *Hansel*, the property owner requested that a month-to-month tenant vacate the premises, and the tenant "indicated a willingness to do so as soon as he was able to find a place for his personal effects." *Hansel* at *1-2. No agreement was made for an additional period and no time was fixed for vacation of the premises. *Id.* at *2. The tenant was absent for "a week or so," but his personal property remained at the premises. *Id.* The property owner indicated that he "believed" that the tenant had left. *Id.* The property owner then entered the premises, moved the tenant's property outside and "accomplished an eviction through his own efforts." *Id.* When the tenant returned, most of his property was gone or useless from being outside. *Id.* After the tenant sued for damages to his personal property, the property owner argued that the tenant had abandoned his property. *Id.* The trial court disagreed and ruled in the

tenant's favor, finding the self-help by the landlord to be unlawful. *Id.* The property owner appealed and argued that his notice of intent not to renew the month-to-month tenancy had "removed all rights of the tenant at the expiration of the term" and argued that "if a tenant does not vacate and remove his property within a reasonable time, the landlord may do so." *Id.* at *3. After finding that the property owner cited no authority for his "novel argument," the Second District agreed with the trial court and found that "the law of abandonment of property has no application in this case." *Id.* at *3-4.

{¶16} Conversely, in *Markovich v. Hunt*, 4th Dist. Lawrence No. 94CA16, 1995 Ohio App. LEXIS 282 (Jan. 19, 1995), the owner of a residential premises informed the tenant via a mailed letter that he was the new owner of the property and arranged to discuss "the future of their rental agreement." *Hunt* at *1. The parties met on March 20 regarding the tenant's move-out date; however, there was some confusion on when exactly the agreed move-out date was. *Id.* The tenant testified that she had agreed to move out by April 30 but told the property owner she would move out "at the first of April" because she did not want to wait until the last minute. *Id.* at *2. The property owner mailed the tenant a letter, dated March 24, reminding the tenant that she had agreed to move out by the end of April. *Id.* Around April 12, the property owner sent a local contractor to the residence to see if the tenant had moved. *Id.* at *2-3. The contractor testified that, upon going to the residence, he talked to a neighbor who had not seen anyone at the premises for three weeks. *Id.* at *3. He knocked on the door and received no answer. *Id.* Upon finding the door unlocked, he looked in the premises and "discovered several items which he believed were trash." *Id.* "These items included a broken recliner, a broken dresser with two drawers missing, an old stereo with no electronics inside, and bags of garbage." *Id.* Believing the property to be abandoned, the contractor disposed of the items. *Id.* The tenant

14

went back to the premises the following day to retrieve her property and discovered the items were missing. *Id.*

**{¶17}** The tenant sued, seeking damages for the value of her property. *Id.* The trial court ruled in favor of the property owner, finding that the parties had agreed that the tenant would move out on April 1, and that the tenant had abandoned the property. *Id.* at *3-4. The tenant appealed, arguing that the trial court erred in finding that she abandoned the property. *Id.* at *4. The Fourth District disagreed, noting that there must be "[p]roof of an intent to abandon along with acts or omissions implementing the intent." *Id.* at *5, citing *Hamilton v. Harville*, 63 Ohio App.3d 27, 577 N.E.2d 1125 (12th Dist.1989). The court then found that, in addition to the parties agreeing to the move-out date, the evidence showed that (1) the tenant never paid rent for the month of April and made no effort to contact the property owner regarding the status of her property left on the premises; (2) the tenant admitted she moved into her new residence on April 1, and had the electricity in the rental property turned off; and (3) the door to the residence was unlocked and the items were next to other bags of garbage. *Id.* at *6.

**{¶18}** Thus, in *Hunt*, the evidence showed that the parties agreed to a move-out date, the tenant said she would move by the first of April, the tenant did in fact move to a new place on the first, the tenant did not provide any further communication to the landlord about the status of the property remaining at the residence, and the tenant left only "trash" remaining at the residence. *See id.*

**{¶19}** Here, the trial court found the following:

> [T]he competent, credible evidence established that Staley
> was no longer residing at the property on October 29. The furniture had
> been moved out, and only the mattress was on the floor, a broken-chair,

2-3 televisions that Phillips described didn't turn on after plugging them in, an older washer and dryer, and some miscellaneous personal effects. It should be noted that Phillips also found a passport, kids' birth certificates, a youth football award, a vacuum cleaner, and a steamer. Phillips put the personal papers in the closet. Phillips testified that at some point these items were retrieved from the property, although the evidence does not indicate when.

Based on these findings, the court concluded that Staley was no longer residing at the residence as of October 29, and any remaining personal property left at the premises by Staley as of November 1 had been abandoned. Notably, the court stated, "[W]hile Phillips acknowledges some personal items were left in the property, the court is of the opinion that the opportunities afforded Staley to retrieve the items, and her failure to return to the property as offered, or otherwise communicate with Phillips to make arrangements to return, evidences an unequivocal relinquishment of her interest in the remaining items."

{¶20} We disagree. The case at hand is different from the situation in *Hunt* because, although the trial court found that Staley herself was no longer residing at the residence as of October 29, Staley never finalized a move-out date with Phillips, *did* communicate with Phillips regarding the status of the property remaining at the premises, and left additional items remaining at the premises other than "trash." In fact, Staley directly told Phillips that she still had personal items remaining at the premises and told Phillips that she would let her know when she had removed everything from the premises. The fact that Staley did not set a date certain when she would have the items out does not change the fact that she had let Phillips know that she was still in possession of the premises. The determination of abandonment is

16

about the intent of the tenant. *See McCain*, 2d Dist. Darke No. 2014-CA-8, 2015-Ohio-198, at ¶ 17.

**{¶21}** Moving most of her belongings is not determinative of Staley's intent to terminate her expectation of use of the premises. Even when Phillips told Staley that she was implementing a per-day fee for every day that Staley remained in possession of the premises, Staley did not change her position that she still had items remaining at the premises. Additionally, the trial court's determination that Staley was no longer residing at the residence is of no consequence as a tenancy creates not only the right to occupy the premises, but also the right to *use* the premises. *See Kardous*, 1st Dist. Hamilton No. C-200406, 2021 Ohio App. LEXIS 3118, at *12; R.C. 5321.01(D).

**{¶22}** Further, it is especially of no consequence that Staley did not return to the premises on the date set *by the landlord* to pick up her remaining personal property, particularly when Phillips had already changed the locks to the premises, because a landlord is prohibited from utilizing self-help to regain possession of the premises. *See* R.C. 5321.15(A). "Under R.C. 5321.15(A), a landlord may not initiate any act against a tenant for the purposes of recovering possession of the residential premises, except as provided in R.C. Chapters 1923, 5303, and 5321." *Risch v. Samuel*, 1st Dist. Hamilton No. C-190159, 2020-Ohio-1094, ¶ 15; *see Mercer v. Halmbacher*, 2015-Ohio-4167, 44 N.E.3d 1011, ¶ 11 (9th Dist.) ("R.C. Chapter 5321, Ohio's Landlord-Tenant Act, regulates the relationship between residential landlords and their tenants. R.C. 5321.15(A) provides that landlords may only evict residential tenants by following the procedures set forth in R.C. Chapters 1923, 5303, and 5321."); *Burkholder v. Straughn*, 11th Dist. Trumbull No. 97-T-0146, 1998 Ohio App. LEXIS 2895, *6-7 (June 26, 1998) ("In Ohio, an eviction proceeding is known as a forcible entry and detainer action. Such actions are governed by R.C. Chapter 1923, and a landlord who seeks to

expel a tenant from possession of leased premises must proceed in accordance with the statutory provisions. R.C. 5321.15 expressly prohibits 'self-help,' wherein a landlord attempts to evict a residential tenant without resort to legal procedure.").

**{¶23}** Changing the locks to the premises and removing a tenant's possessions from the premises are both unlawful acts, which a landlord may not threaten to do or actually do to recover possession of the premises. *See* R.C. 5321.15(A); *Amba Invests., LLC v. Clark*, 12th Dist. Butler No. CA2021-02-016, 2022-Ohio-43, ¶ 33-34. "The intent behind the Landlord-Tenant Act [R.C. Chapter 5321] was to ensure equitable dealings between landlords and tenants due to the greater power traditionally held by the landlord." *Pool v. Insignia Residential Group*, 136 Ohio App.3d 266, 270, 736 N.E.2d 507 (1st Dist.1999), citing *Vardeman v. Llewellyn*, 17 Ohio St.3d 24, 28, 476 N.E.2d 1038 (1985). "The apparent intent of the General Assembly in the enactment of R.C. 5321.15 was to minimize the hardship and breaches of the peace which frequently accompany dispossessions carried out by private parties." *State ex rel. Marsol Apartment Co. v. Vannuci*, 68 Ohio App.2d 181, 185, 428 N.E.2d 468 (1980).

**{¶24}** The proper remedy under the law when a tenant refuses to vacate the premises is to file a proper action pursuant to R.C. Chapter 1923. *See* R.C. 5321.03(A)(4). " 'Forcible entry and detainer, as authorized in R.C. Chapter 1923, is a summary proceeding in which a court may make inquiry into disputes between landlords and tenants, and, where appropriate, order restitution of the premises to the landlord.' " *Show Mgt. Corp. v. Mountjoy*, 2020-Ohio-2772, 154 N.E.3d 141, ¶ 15 (12th Dist.), quoting *Cuyahoga Metro. Hous. Auth. v. Jackson*, 67 Ohio St.2d 129, 130, 423 N.E.2d 177 (1981). " 'A forcible entry and detainer action is intended to serve as an expedited mechanism by which an aggrieved landlord may recover possession of real property.' " *Id.*, quoting *Miele v. Ribovich*, 90 Ohio St.3d 439, 441-442, 739 N.E.2d

333 (2000). "The underlying purpose behind the forcible entry and detainer action is to provide a summary, extraordinary, and speedy method for the recovery of the possession of real estate." *Id.* It is " 'a civil remedy provided by statute and intended to affect only the question of the present right to possess real property.' " *Mathews v. Cooper*, 8th Dist. Cuyahoga No. 109974, 2021-Ohio-2768, ¶ 74, quoting *Di Fiore v. Booker*, 8th Dist. Cuyahoga No. 108946, 2020-Ohio-3188, ¶ 25. The actions "decide the right to immediate possession of property and nothing else." *Long v. MacDonald*, 3d Dist. Crawford No. 3-02-10, 2002-Ohio-4693, ¶ 8, citing *Seventh Urban, Inc. v. Univ. Circle Property Dev., Inc.*, 67 Ohio St.2d 19, 423 N.E.2d 1070 (1981), fn. 11.

{¶25} Allowing the evidence relied upon by the trial court to be used as a basis to find an intent to abandon the premises and any items remaining would essentially be allowing a landlord to partake in a self-help eviction when a tenant does not fully move by a date certain set by the landlord. This would be contradictory to the purpose of forcible-entry-and-detainer actions and the prohibition set forth in R.C. 5321.15(A). *See generally Rand v. Washington*, 2d Dist. Montgomery No. 7822, 1983 Ohio App. LEXIS 14097, *3-7 (May 26, 1983) (finding a lease provision to be inconsistent with R.C. 5321.15(A) where the provision established "a 'conclusive presumption of abandonment' by a tenant and a corresponding contractual right to 'immediate possession' of a tenant's personalty by the landlord, upon expiration of the lease").

{¶26} Although the trial court discredited Staley's testimony, the text messages in the record speak for themselves. Attempting to work with the demands of the landlord, Staley was in the process of moving from the premises. She specifically told Phillips via text message, "I will let you know if all of my things are out." Phillips then showed up at the residence and got upset that Staley had not moved. From the landlord's own testimony, Staley had told Phillips again that she would let Phillips

know when she was leaving. There was no testimony or evidence from Phillips of any subsequent communication wherein Staley had expressed her agreement to leave before Phillips changed the locks and disposed of Staley's property two days after Phillips had told Staley that her items would not be touched. Although Phillips tried to set expectations for when Staley was to vacate the premises, the communication Phillips had received from Staley was otherwise and yet, Phillips chose to ignore it. When Staley did not leave as requested, Phillips should have utilized the remedy provided to landlords in R.C. Chapter 1923, a forcible-entry-and-detainer action, but she did not.

{¶27} Therefore, the evidence in the record is insufficient to support the trial court's finding of an "unequivocal relinquishment" by Staley of her interest in the remaining items or the premises and is therefore insufficient to support the trial court's finding of abandonment. Even without considering Staley's testimony, which was discredited by the trial court, the greater amount of credible evidence proved, by a preponderance of the evidence, that Phillips did violate the prohibition on self-help evictions in R.C. 5321.15(A) in order to regain possession of the premises.

{¶28} However, we must determine if the trial court's alternative finding—that even if Staley had not abandoned the property, there was no credible evidence from which the court could determine damages—was sufficient to support the trial court's judgment. R.C. 5321.15(C) provides that a landlord who violates R.C. 5321.15(A) is liable for "all damages caused to a tenant, or to a tenant whose right to possession has terminated, together with reasonable attorneys fees." Because matters of credibility are left to the trial court, we cannot determine the trial court erred in finding that Staley's evidence of damages, which consisted of her testimony and a hand-written list

of items allegedly left in the premises, was "wholly unworthy of belief." *See Risch*, 1st Dist. Hamilton No. C-190159, 2020-Ohio-1094, at ¶ 21.

**{¶29}** Staley argues that, because Phillips acted in violation of R.C. 5321.15(A), the trial court should have awarded reasonable attorney fees under R.C. 5321.15(C). The trial court did not address attorney fees in its entry. An award of attorney fees under R.C. 5321.15(C) is mandatory when damages are awarded for a violation of R.C. 5321.15(A). *See Risch* at ¶ 17, citing *Conner v. Conner*, 2018-Ohio-2698, 114 N.E.3d 281, ¶ 21 (4th Dist.) Yet, there is a question of whether attorney fees are mandatory where, like here, no damages are awarded for the violation. In *Vardeman*, 17 Ohio St.3d at 29, 476 N.E.2d 1038, the Ohio Supreme Court found that attorney fees under R.C. 5321.16(C) "may be awarded only when a tenant prevails on his claim for damages based upon the trial court's finding that the landlord has wrongfully withheld any amount due to the tenant."[1] The court stated:

> Attorney fees have been provided within this section as a further penalty to the landlord who has not given the tenant an itemization and explanation for any amounts withheld, and where there is the finding that such amounts have been wrongfully withheld and not returned to the tenant. When the trier of the facts finds that the landlord has

---

[1] In relevant part, R.C. 5321.16(B) provides:

> Upon termination of the rental agreement any property or money held by the landlord as a security deposit may be applied to the payment of past due rent and to the payment of the amount of damages that the landlord has suffered by reason of the tenant's noncompliance with section 5321.05 of the Revised Code or the rental agreement. Any deduction from the security deposit shall be itemized and identified by the landlord in a written notice delivered to the tenant together with the amount due, within thirty days after termination of the rental agreement and delivery of possession.

R.C. 5321.16(C) provides, "If the landlord fails to comply with division (B) of this section, the tenant may recover the property and money due him, together with damages in an amount equal to the amount wrongfully withheld, and reasonable attorneys fees."

improperly held these funds, the award of attorney fees shall be exacted in that the tenant has in fact been damaged. However, where the trial court finds that the landlord has properly withheld the portion of the security deposit in question, it is reasonable to conclude that the tenant has not been damaged and may claim neither the double damages as heretofore discussed, nor the attorney fees as set forth in R.C. 5321.16(C).

*Id.* Essentially, the court found that attorney fees should not be awarded, despite a violation, if no damages occurred as a result. *See id.*

{¶30} Although the court was addressing a different statutory provision, we find that the same rationale should apply here. While Phillips acted in violation of R.C. 5321.15(A), the trial court determined that Staley suffered no damages as a result, and we cannot find that this determination was against the weight of the evidence. Because Staley did not suffer any damages, an award of attorney fees was not warranted under R.C. 5321.15(C). Therefore, the trial court's alternative finding was sufficient to support the trial court's judgment. Accordingly, the assignment of error is overruled.

## Conclusion

{¶31} Having overruled the sole assignment of error, we affirm the judgment of the trial court.

Judgment affirmed.

**BOCK, J.,** concurs
**WINKLER, J.,** concurs in judgment only.

Please note:

The court has recorded its own entry this date.

22